IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO.: 3:25MJ320-MEO |
| | ) | |
| v. | ) | **UNITED STATES' MOTION** |
| | ) | ***IN LIMINE* TO PRECLUDE** |
| WILLIAM STANLEY and | ) | **IMPROPER EVIDENCE AND** |
| HEATHER MORROW | ) | **ARGUMENTS** |
| | ) | |

NOW COMES the United States of America, by and through Dallas Kaplan, First Assistant United States Attorney, Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515, respectfully submits the following motion *in limine*. This case involves a November 16, 2025, involving Defendants William Stanley (Stanley) and Heather Morrow (Morrow) and several law enforcement officers at the Immigration and Customs Enforcement (ICE) office in Charlotte, North Carolina. As a result of their interaction, Stanley and Morrow were charged with obstructing the use of entrances on federal property, impeding and disrupting the performance of official duties of government employees, failure to comply with lawful direction of authorized individuals, and assaulting, resisting, opposing, impeding, intimidating, and interfering with persons performing official duties.

While the facts are straightforward, there are foreseeable evidentiary issues that could jeopardize an orderly trial. To ensure that the trial proceeds within the bounds of relevant laws and rules, the United States respectfully moves this Court to issue pretrial rulings prohibiting the defendants, Stanley and Morrow (Defendants), from (1) presenting argument or evidence regarding the previously dismissed Complaint; (2) eliciting self-serving hearsay; (3) submitting improper questions about the Defendants' characters, unless the evidence complies with the

1

requirements of Federal Rule of Evidence 405; and (4) cross-examining or impeaching witnesses with investigative reports the witness has not signed or adopted.

The United States makes this omnibus motion *in limine* to narrow the issues for trial, to exclude irrelevant, extraneous, or unduly prejudicial arguments and evidence, and to expedite this Court's determination of the legal disputes likely to arise during trial. "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Likewise, defendant's proposed evidence and argument should be excluded when it "would confuse the jury and misdirect the jury's focus from the issues properly before it." *United States v. Wellons*, 32 F.3d 117, 120 n.3 (4th Cir. 1994).

In the interest of judicial economy, and to facilitate this Court's resolution of legal and evidentiary disputes likely to arise at trial, the United States respectfully submits that the relief sought in this omnibus motion should be granted. Pre-trial rulings on the issues below will expedite the trial by making the presentation of evidence and argument more efficient, by eliminating the need for argument or briefing on the below issues mid-trial, and to inform any necessary jury instructions.

### STANDARD OF REVIEW

"The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion." *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004). Likewise, "the decision to exclude evidence because of possible prejudicial effect rests in the sound discretion of the trial court." *United States v. Schnabel*, 939 F.2d 197, 202 (4th Cir. 1991). Similarly, "[t]he presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion." *Herring v. New York*, 422

U.S. 853, 862 (1975). "Since it [is] the court's responsibility to present [the law] to the jury in a clear manner, the court [will] not abuse its discretion by requiring the defense counsel to argue consistently with the correct law." *United States v. Wables*, 731 F.2d 440, 449 (7th Cir. 1984).

Evidence that is not relevant is generally not admissible and evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401 and 402. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion, cumulativeness, misleading the jury, or wasting time. Fed. R. Evid. 403. Moreover, the Defendants have no right to present all evidence and raise all arguments that they want during their trial. In *United States v. Lightly*, 616 F.3d 321, 359 (4th Cir. 2010), the Fourth Circuit held that:

> Although a defendant has a constitutional right to present evidence in his favor, *United States v. Moussaoui,* 382 F.3d 453, 471 (4th Cir.2004), "a defendant's right to present a defense is not absolute: criminal defendants do not have a right to present evidence that the district court, in its discretion, deems irrelevant or immaterial." *United States v. Prince–Oyibo,* 320 F.3d 494, 501 (4th Cir.2003); *see also Crane,* 476 U.S. at 689–90, 106 S.Ct. 2142 (noting that the "Constitution leaves to the judges who must make these decisions wide latitude to exclude evidence that is repetitive ..., only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues").

A judge's ability to conduct the trial and curtail the defendant's ability to present his or her case also includes the ability to restrict the scope of cross-examination. When a judge restricts cross-examination, "[t]he inquiry, then, is whether the trial court's restrictions impermissibly interfered with the Sixth Amendment right of the defendants or were otherwise so prejudicial as to result in an abuse of discretion." *United States v. Hawkins*, 661 F.2d 436, 444 (5th Cir. 1981).

## FACTUAL BACKGROUND

Defendant Stanley and Defendant Morrow are charged with obstructing the use of entrances on federal property, in violation of 40 U.S.C. § 1315, 41 C.F.R. § 102-74.365, 41 C.F.R. § 102-74.390(b), 41 C.F.R. §102-74.450, and 18 U.S.C. § 2; impeding and disrupting the performance of official duties of government employees, in violation of 40 U.S.C. § 1315, 41 C.F.R. § 102-74.365, 41 C.F.R. § 102-74.390(c), 41 C.F.R. §102-74.450, and 18 U.S.C. § 2; failure to comply with lawful direction of authorized individuals, in violation of 40 U.S.C. § 1315, 41 C.F.R. § 102-74.365, 41 C.F.R. § 102-74.385, 41 C.F.R. §102-74.450, and 18 U.S.C. § 2; and assaulting, resisting, opposing, impeding, intimidating, and interfering with persons performing official duties, in violation of 18 U.S.C. §§ 111(a)(1) and 2. Doc. 1.

On the early morning of November 16, 2025, Defendant Morrow and Defendant Stanley gathered at the U.S. Immigration & Customs Enforcement (ICE)/Enforcement & Removal Operations (ERO) Office facility located at 6130 Tyvola Centre Drive, Charlotte, North Carolina (the Office). A blue Subaru Outback was parked in the vicinity of the exit lane to the property and blocked the flow of traffic leaving the Office. The Defendants and others were attempting to block the entrance lane to the Office with their physical bodies and cones that were spaced across the entrance lane.

ERO Deportation Officer (DO) 1 (DO1) arrived at the Office driving his government issued vehicle, a gray Dodge Ram truck with installed emergency equipment. He was dressed in civilian attire. As he pulled his vehicle into the Office, he was hindered from proceeding any further because of the cones and the Defendants blocking the entrance lane. DO1 activated his emergency lights and used his vehicle's installed public address (PA) system to advise the Defendants that they were impeding the flow of traffic and if they did not move, they would be arrested. DO1 gave

4

this command several times to the Defendants but they failed to follow his commands and did not move.

ERO DO2 arrived at the Office behind DO1 in his government issued vehicle, a blue pickup truck. He also observed the Defendants blocking the entrance and exit lanes. DO2 exited his vehicle and heard DO1 giving commands to the Defendants through his PA system. DO2 was wearing a law enforcement tactical vest with "ERO" in yellow letters in the center of the vest and an embroidered ICE badge affixed to the left shoulder of the vest. DO2 approached the Defendants, pulled out his oleoresin capsicum (OC) spray and warned them they would be sprayed and arrested if they did not leave the property.

ERO DO3 and ERO DO4 were riding together in DO3's government issued vehicle, a black Dodge Caravan, and arrived at the Office behind DO2. After observing DO2's interactions with the Defendants, DO3 and DO4 exited their vehicle. At this point, the Defendants had moved enough that DO1 was able to move his vehicle forward. As DO1 was driving slowly towards the side of the Office, Defendant Stanley walked to the front of his vehicle and placed his body in front of it, hindering it from moving any further. After DO1 stopped his vehicle, Defendant Stanley ran up to the driver's side door and hit the window with his fist. DO1 exited his vehicle and advised Defendant Stanley that he was under arrest. DO1 attempted to place Defendant Stanley in custody, however, Defendant Stanley resisted and pulled away from DO1.

DO3 observed DO1's struggle to place Defendant Stanley in custody because of the Defendant's resisting. As DO1 was struggling to place Defendant Stanley into custody, he felt someone grabbing his shoulders. DO2 and DO4 observed Defendant Morrow grabbing DO1's shoulders from behind. DO1 had his back to Defendant Morrow. DO4 believed that DO1 was armed and worried that Defendant Morrow may have been going for DO1's weapon. Fearing for

5

DO1's safety, DO4 rushed to grab Defendant Morrow and take her into custody with the assistance of DO2. DO1 and DO3 were able to take Defendant Stanley into custody, despite his continued resistance.

On November 17, 2025, the government charged Morrow by Criminal Complaint with violations of 18 U.S.C. § 111(a)(1) (Felony Assault, Resist, and Impede a Federal Officer). 3:25MJ305, Doc. 3. Defendant Stanley was not charged in the Complaint. On November 24, 2025, the government moved to dismiss this Criminal Complaint *Id*. at Doc. 17. On the same day, November 24, 2025, Stanley and Morrow were charged by Bill of Information with violations of 40 U.S.C. § 1315, 41 C.F.R. § 102-74.365, 41 C.F.R. § 102-74.385, 41 C.F.R. § 102-74.390, 41 C.F.R. §102-74.450, and 18 U.S.C. § 111(a)(1) and 2. Doc. 1. The Bill of Information is the controlling charging document.

## DISCUSSION

**I.     The Court Should Preclude Argument or Evidence Regarding the Previously Dismissed Complaint**

Any evidence of, argument about, or reference to the dismissed federal Complaint should be precluded because it is irrelevant to any issue to be considered by the jury in the current prosecution of the Defendants. Moreover, admission of such evidence would create a grave risk of confusing and misleading the jury and causing undue prejudice.

First, any reference to the dismissed federal Complaint should be precluded because it is irrelevant to whether the Defendants are guilty or not guilty of the charged offenses in this case (and, for that matter, whether Morrow was guilty or not guilty of the now-dismissed felony charge). As the Fourth Circuit has previously explained, "a [government]'s decision to drop charges may have nothing at all to do with guilt or innocence." *United States v. Benson*, 957 F.3d 218, 236 (4th Cir. 2020). Indeed, "[s]everal circuits have unanimously upheld the exclusion of evidence of prior

6

charging decisions on the ground that many factors unrelated to guilt may influence those decisions and their admission therefore risks misleading the jury and confusing the issues." *United States v. Reed*, 641 F.3d 992, 993-94 (8th Cir. 2011); *see also United States v. Candelaria-Silva*, 166 F.3d 19, 35 (1st Cir. 1999) ("[C]ases are dismissed for many reasons unrelated to the defendant's guilt."); *United States v. Delgado*, 903 F.2d 1495, 1499 (11th Cir. 1990) ("[W]e cannot attribute the government's decision not to prosecute to an independent determination that the defendant is not guilty."). Rather, "non-prosecution decisions are irrelevant because they often take 'into consideration the availability of prosecutorial resources, alternative priorities, the expectation of prosecution by other authorities, or any number of other valid discretionary reasons.'" *Benson*, 957 F.3d at 236- 37 (quoting *United States v. Bingham*, 653 F.3d 983, 999 (9th Cir. 2011)).

Evidence or argument about a dismissed charge is "particularly" irrelevant where, as here, the dismissed charge and the current charge have "distinct elements." *Benson*, 957 F.3d at 236 ("[A government's] decision to drop charges may have nothing at all to do with guilt or innocence, particularly in relation to a federal crime with distinct elements."). In this case, Defendant Morrow and Defendant Stanley are charged with a misdemeanor violation of 18 U.S.C. §111(a)(1). The dismissed Criminal Complaint had alleged the more serious felony violation which requires the additional element of proving that the act involved physical contact with the victim of the assault, or that it was committed with the intent to commit another felony. *Id*. Thus, the government's exercise of its prosecutorial discretion to dismiss the earlier Complaint does not make more or less probable any fact that is relevant to proving the misdemeanor charge. *See id*. at 236; *see also* Fed. R. Evid. 401 (describing relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence"). For this reason, any reference to the

7

dismissed federal Complaint should be precluded under Federal Rule of Evidence 402 ("Irrelevant evidence is not admissible.").

Second, any evidence of or reference to the dismissed federal Complaint should be precluded under Federal Rule of Evidence 403 because it runs a high risk of prejudice to both parties and would undoubtedly confuse, mislead, and prejudice the jury. On one hand, if jurors learned that Defendant Morrow had previously been charged with a felony and that Defendant Stanley was not included in the original Complaint, they might conclude, with or without evidentiary support, that the Defendants are guilty, or not guilty. On the other hand, jurors who are unaware that "nonprosecution decisions . . . take into consideration . . . any number of . . . valid discretionary reasons" unrelated to guilt or innocence, *Benson*, 957 F.3d at 236-37 (internal quotation marks omitted), might assume that the dismissal reflects a weakness in the government's case. Even if there were some limited relevance to the dismissed federal Complaint, "explaining its significance and relevance to the jury," as well as the reasoning behind the government's charging decisions, "would consume time with little or no probative value at the end of the day, and [would] be unnecessarily confusing." *Bingham*, 653 F.3d at 999; *see also Delgado*, 903 F.2d at 1499 (explaining that even if evidence of a government's decision to drop certain charges were relevant, "it would not be admissible under Rule 403"). Put simply, evidence or argument regarding the dismissed Complaint is both irrelevant and unfairly prejudicial under Rules 401 and 403. In short, allowing evidence of or reference to the dismissed federal Complaint would present jurors with incomplete facts and would improperly invite them to speculate as to the meaning of and basis for the initial charge and/or its later dismissal.

Moreover, Rule 401(b) prevents the introduction of evidence or argument regarding the dismissed Complaint because it is not a fact "of consequence in determining the action." The prior

case ended with a dismissal, and it has no bearing on the current Information against the Defendants. For the reasons presented, the government respectfully requests an *in limine* order precluding reference to the dismissed federal Complaint.

**II. The Court Should Preclude the Defendants from Introducing Self-Serving Hearsay at Trial**

The Government anticipates that it may seek to introduce at trial various statements or admissions made by the Defendants, including but not limited to statements made to law enforcement officers or news media. Such evidence is appropriate only if introduced by the Government because they are non-hearsay statements of an opposing party. Fed. R. Evid. 801(d)(2). In contrast, the Defendants may not rely on this rule of non-hearsay to get into evidence self-serving statements uttered by the Defendants. *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) ("The [Federal Rules of Evidence] do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party").

Similarly, the Court should not allow the Defendants to introduce self-serving statements through "backdoor" means. Because such self-serving statements lack the requisite indicia of reliability and trustworthiness required to overcome the hearsay rule, courts have also routinely rejected admission of these statements under other exceptions to the hearsay rule, such as to explain a defendant's then-existing state of mind under Fed. R. Evid. 803(3). *See United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999); *United States v. Secor*, 73 F3d. Appx. 554, 566 (4th Cir. 2003) (affirming the exclusion of the defendant's statements to the IRS because the defendant had time to reflect and fabricate – undermining the "spontaneity" that underlies the Fed. R. Evid. 803(3) exception to the rule against hearsay); *United States v. Curry*, 2013 U.S. Dist. LEXIS 39398 at *21-22 (D. Md. Mar. 15, 2013); *United States v. Yousef*, 327 F.3d 56, 153 (2d

Cir. 2003) ("while the Government was free to introduce the statement as an admission by a party-opponent, *see* Fed.R.Evid. 801(d)(2)(A), [the defendant] had no right to introduce it on his own"); *United States v. Gossett*, 877 F.2d 901, 906 (11th Cir. 1989) ("The testimony was not admissible under Rule 801(d)(2) because the admission sought to be introduced was made by a co-defendant who is not a party opponent. The Government is the party opponent of both defendants.").

For all of these reasons, the Government moves the Court to exclude and prevent the Defendants from eliciting self-serving hearsay statements during (1) cross-examination of the Government's witnesses, (2) direct examination through their own witnesses, or (3) arguments during opening statements or otherwise referencing said self-serving statements unless and until properly introduced through the trial testimony of the Defendants, who would then have their statements tested through cross-examination.

### III. The Court Should Preclude the Introduction of Improper Good Character and Conduct Evidence

The Court should also preclude the Defendants from presenting evidence regarding the Defendants' alleged good character. Federal Rule of Evidence 405(a) provides:

> In all cases in which evidence of character or a trait of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

Fed. R. Evid. 405(a).

The Fourth Circuit has been clear that "evidence of specific good acts is *not* admissible [under] Fed. R. Evid. 405." *See United States v. Gravely*, 840 F.2d 1156 (4th Cir. 1988) (emphasis added). Rather, when character is not an essential element,[1] "proof of character is limited to

---

[1] The element of criminal intent does not put character in issue. *See United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (rejecting defendant's argument that "one of the essential elements of the offense charged was his *mens rea* during the time he was alleged to have agreed to join this conspiracy," and holding that "[e]vidence of good conduct

general good character (reputation as a good person and law-abiding citizen)." *Id*. The Supreme Court explained that limiting character evidence to reputation testimony is "justified by over-whelming considerations of practical convenience in avoiding innumerable collateral issues which, if it were attempted to prove character by direct testimony, would complicate and confuse the trial, distract the minds of jurymen and befog the chief issues in the litigation." *Michelson v. United States*, 335 U.S. 469, 478 (1948). The Court explained further that:

> When the defendant elects to initiate a character inquiry . . . such a witness is not allowed to base his testimony on anything but hearsay. What commonly is called "character evidence" is only such when "character" is employed as a synonym for "reputation." *The witness may not testify about defendant's specific acts* or courses of conduct or his possession of a particular disposition or of benign mental and moral traits; nor can he testify that his own acquaintance, observation, and knowledge of defendant leads to his own independent opinion that defendant possesses a good general or specific character, inconsistent with commission of acts charged. The witness is, however, allowed to summarize what he has heard in the community, although much of it may have been said by persons less qualified to judge than himself. The evidence which the law permits is not as to the personality of defendant but only as to the shadow his daily life has cast in his neighborhood.

*Id*. at 477 (emphasis added). Thus, character evidence is limited to reputation to avoid "innumerable collateral issues . . . [that would] befog the chief issues in the litigation." *Id*. at 478.

The rules regarding character evidence make it clear that certain lines of inquiry are not appropriate. For example, asking witnesses about the Defendants' former military history, involvement in religious organizations, and charitable acts fall squarely outside the rule. Thus, the

---

is not admissible to negate criminal intent."). A holding to the contrary would allow specific conduct character evidence in nearly every case. *See United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997) (excluding the defendant's proffered character evidence in case of conspiracy to commit illegal exportation and holding that "if specific good deeds could be introduced to disprove knowledge or intention, which are elements of most crimes, the exception of Rule 405(b) would swallow the general rule of 405(a) that proof of specific acts is not allowed.").

Government respectfully requests that the Court appropriately limit any defense character witness testimony.  Further, the Government respectfully requests that the Defendants be required to instruct any character witnesses they intend to call that they are not permitted to volunteer information as to specific instances of good conduct (like those referenced above).  Instead, their testimony should be limited to how the witness knows a Defendant, whether the witness has an opinion about or is familiar with a Defendant's reputation in the community for a relevant character trait (such as honesty), and what that opinion or reputation is.

If the Defendants elicit this opinion or reputation testimony, then the Government will be allowed to effectively impeach the witnesses by inquiring about specific instances of bad character. *See, e.g., United States v. Johnson*, 79 F.4th 684, 702 (6th Cir. 2023) ("Johnson questions whether the government could 'cross-examine' its own witness on redirect with specific instances of Johnson's conduct without a court finding that the witness was adverse.  It could.  For purposes of the testimony about Johnson's character, the district court appropriately treated Gissentaner as effectively Johnson's witness"); *Virgin Islands v. Roldan*, 612 F.2d 775, 778 (3d Cir. 1979) (after the defendant questioned a Government witness about the defendant's good character, concluding that "it was permissible for the Government to put in evidence of [the defendant's] bad character through impeachment of [the witness's] good character assessment").

## VI. The Court Should Preclude Cross-Examination or Impeachment of Witnesses with Investigative Reports the Witnesses Have Not Signed or Otherwise Adopted

A witness may be cross-examined and, where appropriate, impeached, only with his or her own prior statements. *See* Fed. R. Evid. 613.  Indeed, it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." *Palermo v. United States*, 360 U.S. 343, 350 (1959).  Because a third party's notes reflect only that

notetaker's summary characterization of a witness's prior statement, "the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible." *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992). Investigative reports, therefore, are not properly deemed the "statements" of the interviewed individuals. *See United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) ("[FBI 302s] are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness.").

Because investigative memorandums of interview are not the statements of the interviewee, unless otherwise adopted by him or her, courts have routinely held that these types of law enforcement reports cannot be used to cross-examine or impeach interviewed parties if they are called as witnesses. *See United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993) ("[A] witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own."); *Almonte*, 956 F.2d at 29 (same); *United States v. Shannahan*, 605 F.2d 539, 542 (10th Cir. 1979) (holding that defense could not use FBI reports to cross examine witnesses because "reports did not come within the rule authorizing the use of prior statements"). Accordingly, the United States moves to preclude the Defendants from (a) cross-examining or seeking to impeach witnesses with nonverbatim reports that have not been signed or adopted by that particular witness; and (b) quoting, publishing, or suggesting to the jury that the contents of an investigative report were, in fact, statements of the witness.

## CONCLUSION

Accordingly, for the reasons set forth above, the Government respectfully requests that the Court: (1) preclude evidence and argument regarding the dismissed Complaint against Morrow; (2) preclude self-serving hearsay; (3) preclude improper questions about the Defendants'

13

characters, unless the evidence complies with the requirements of Federal Rule of Evidence 405; and (4) preclude cross-examining or impeaching witnesses with investigative reports the witness has not signed or adopted.

RESPECTFULLY SUBMITTED this 29th day of July, 2026.

<div style="margin-left:50%">

DALLAS KAPLAN
First Assistant United States Attorney
*Attorney for the United States, Acting Under*
*Authority Conferred by 28 U.S.C. § 515*

/s/ Kenneth Smith
KENNETH SMITH
Assistant United States Attorney
North Carolina Bar Number 17934
Kenny.Smith@usdoj.gov

/s/ Caryn Finley
CARYN FINLEY
Assistant United States Attorney
New York Bar Number 3953882
Caryn.Finley@usdoj.gov

United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
704-244-6222

</div>