IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO.: 3:25mj320-MEO |
| | ) | |
| v. | ) | **UNITED STATES' MOTION** |
| | ) | ***IN LIMINE* CONCERNING** |
| WILLIAM STANLEY and | ) | **JURY NULLIFICATION AND** |
| HEATHER MORROW | ) | **IMPROPER CHARACTERIZATION** |
| | ) | **OF ISSUES FOR CONSIDERATION BY** |
| | ) | **JURY** |
| | ) | |

NOW COMES the United States of America, by and through Dallas Kaplan, First Assistant United States Attorney, Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515, and hereby moves this Court *in limine* to preclude the defendants, William Stanley and Heather Morrow (Defendants), from attempting to introduce improper evidence and making certain arguments during the trial of this case that invites jury nullification or mischaracterizes the issues for consideration by the jury. "Such [jury nullification] verdicts are lawless, a denial of due process, and constitute an exercise of erroneously seized power." *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983).

Specifically, the United States moves the Court to preclude (1) arguments of vindictive or selective prosecution; (2) reference to punishment or collateral consequences of conviction; (3) presenting evidence or argument about policy or political considerations concerning the Administration's immigration policies or enforcement efforts; and (4) argument or evidence that their speech and/or conduct was First Amendment protected activity.

The United States makes this omnibus motion *in limine* to narrow the issues for trial, to exclude irrelevant, extraneous, or unduly prejudicial arguments and evidence, and to expedite this Court's determination of the legal disputes likely to arise during trial. "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible

1

under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Likewise, defendant's proposed evidence and argument should be excluded when it "would confuse the jury and misdirect the jury's focus from the issues properly before it." *United States v. Wellons*, 32 F.3d 117, 120 n.3 (4th Cir. 1994).

In the interest of judicial economy, and to facilitate this Court's resolution of legal and evidentiary disputes likely to arise at trial, the United States respectfully submits that the relief sought in this omnibus motion should be granted. Pre-trial rulings on the issues below will expedite the trial by making the presentation of evidence and argument more efficient, by eliminating the need for argument or briefing on the below issues mid-trial, and to inform any necessary jury instructions.

**<u>STANDARD OF REVIEW</u>**

"The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion." *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004). Likewise, "the decision to exclude evidence because of possible prejudicial effect rests in the sound discretion of the trial court." *United States v. Schnabel*, 939 F.2d 197, 202 (4th Cir. 1991). Similarly, "[t]he presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion." *Herring v. New York*, 422 U.S. 853, 862 (1975). "Since it [is] the court's responsibility to present [the law] to the jury in a clear manner, the court [will] not abuse its discretion by requiring the defense counsel to argue consistently with the correct law." *United States v. Wables*, 731 F.2d 440, 449 (7th Cir. 1984).

Evidence that is not relevant is generally not admissible and evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would

2

be without the evidence. Fed. R. Evid. 401 and 402. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion, cumulativeness, misleading the jury, or wasting time. Fed. R. Evid. 403. Moreover, the Defendants have no right to present all evidence and raise all arguments that they want during their trial. In *United States v. Lightly*, 616 F.3d 321, 359 (4th Cir. 2010), the Fourth Circuit held that:

> Although a defendant has a constitutional right to present evidence in his favor, *United States v. Moussaoui,* 382 F.3d 453, 471 (4th Cir.2004), "a defendant's right to present a defense is not absolute: criminal defendants do not have a right to present evidence that the district court, in its discretion, deems irrelevant or immaterial." *United States v. Prince–Oyibo,* 320 F.3d 494, 501 (4th Cir.2003); *see also Crane,* 476 U.S. at 689–90, 106 S.Ct. 2142 (noting that the "Constitution leaves to the judges who must make these decisions wide latitude to exclude evidence that is repetitive ..., only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues").

A judge's ability to conduct the trial and curtail the defendant's ability to present his or her case also includes the ability to restrict the scope of cross-examination. When a judge restricts cross-examination, "[t]he inquiry, then, is whether the trial court's restrictions impermissibly interfered with the Sixth Amendment right of the defendants or were otherwise so prejudicial as to result in an abuse of discretion." *United States v. Hawkins*, 661 F.2d 436, 444 (5th Cir. 1981).

<u>**FACTUAL BACKGROUND**</u>

This case involves a November 16, 2025, incident involving Defendants William Stanley (Stanley) and Heather Morrow (Morrow) and several law enforcement officers at the Immigration and Customs Enforcement (ICE) office in Charlotte, North Carolina. The Defendants and other people blocked the entrance lane to the ICE office by placing plastic cones and themselves in the way of oncoming vehicles. Using the public address system on his government-issued vehicle, a law enforcement officer informed the Defendants and others that they could not block the entrance

and needed to move the cones and themselves so that vehicles could travel on the road. Other law enforcement officers moved the cones so that a vehicle could pass through, but as the vehicle moved toward the ICE office Stanley stopped it in its path, slapped both hands on the vehicle's hood, and then pounded his fist against the driver's window. The law enforcement officers then arrested both Stanley and Morrow. As a result of this interaction, Stanley and Morrow were charged with obstructing the use of entrances on federal property, impeding and disrupting the performance of official duties of government employees, failure to comply with lawful direction of authorized individuals, and assaulting, resisting, opposing, impeding, intimidating, and interfering with persons performing official duties.

After the government filed charges against Stanley and Morrow, Morrow and her attorney appeared on television and expressed their opinions about the November 16, 2025, incident and the charges filed. Examples include the following:

> https://www.wbtv.com/2025/11/26/charlotte-woman-disputes-federal-charges-after-protesting-border-patrol-activity-outside-dhs-office/
>
> Defendant Morrow: "I'm standing in my faith, I feel like it's a joke to them now, and they just want to make an example out of me," Morrow said. "It's my duty, it's my constitutional duty." It is about our immigrants.
>
> Defense counsel Xavier de Janon: "What is happening is CBP gets to town, causes chaos, brings charges, leaves, and then the mess is left for us who stay here," de Janon said. "I think there is a national pattern specifically on immigration and anti-immigration protests across the country, where charges are being thrown at protesters, ICE documenters, people who are just there, people who are part of organizations."

https://www.wcnc.com/article/news/crime/defense-attorney-challenges-assault-charges/275-8bc95943-d19e-4efa-84bb-20fd747c2b79

Defense counsel Xavier de Janon: "I think it's good advice to continue recording. People have a First Amendment right to document law enforcement in this country."

https://spectrumlocalnews.com/nc/charlotte/news/2025/11/27/bus-driver-faces-misdemeanor-charges-following-immigration-enforcement-activity

Defendant Morrow on why she was at the ICE office: "Just as a human being, I feel I just want to take it back to that. It personally affects me because my neighbors are all different colors. We make up a beautiful fabric on this so-called America."

## **LEGAL DISCUSSION**

The United States is concerned that the Defendants may attempt to encourage jury nullification, by (a) alleging vindictive or selective prosecution; (b) referencing punishment or collateral consequences of conviction; (c) arguing, referencing, or otherwise eliciting evidence concerning immigration policy and enforcement; and (d) advancing an argument or presenting evidence that the Defendants' speech and/or conduct was protected by the First Amendment. This Could should preclude the Defendants from improperly encouraging jury nullification because it is improper at any stage of the trial, including during voir dire, opening statements, witness examinations, or during closing argument.

It is clearly established in the Fourth Circuit that a defendant may not invite jury nullification in any form. *United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996) ("[A] defendant is not entitled to inform the jury that it can acquit him on grounds other than the facts in evidence, i.e. a jury has the power of nullification but defense counsel is not entitled to urge the jury to exercise this power."); *see also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("[Jury nullification] verdicts are lawless, a denial of due process and constitute an exercise of

5

erroneously seized power.") (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)). The jury has the obligation to apply the law to the evidence. *United States v. Moylan*, 417 F.2d 1002, 1007 (4th Cir. 1969) ("We must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence").

In *United States v. Moylan*, 417 F.2d 1002, 1003 (4th Cir. 1969), three defendants were convicted of mutilating government records, destroying government property, and interfering with the administration of the Selective Service System. In addition to contesting the trial court's instructions on *mens rea*, the defendants argued, "that the trial judge should have informed the jury, as requested, that it had the power to acquit even if the [defendants] were clearly guilty of the charged offenses." *Id*. at 1005. The defendants "maintain[ed] that the judge should have told the jury this or permitted their counsel to argue it to the jury in the face of the judge's instruction on the law." *Id*. The defendants argued that "since the jury has the 'power to bring a verdict in the teeth of both law and facts,' then the jury should be told that it has this power," and that "the jury's power to acquit where the law may dictate otherwise is a fundamental necessity of a democratic system." *Id*.

After characterizing the defendants' arguments as tantamount to encouraging jury lawlessness, the *Moylan* Court firmly rejected them:

> [T]his is not to say that the jury should be encouraged in their lawlessness,' and by clearly stating to the jury that they may disregard the law, telling them that they may decide according to their prejudices or consciences (for there is no check to insure that the judgment is based upon conscience rather than prejudice), we would indeed be negating the rule of law in favor of the rule of lawlessness.
> * * *
> Public and private safety alike would be in peril if the principle be established that juries in criminal cases may, of right, disregard the

> law as expounded to them by the court, and become a law unto themselves. Under such a system, the principal function of the judge would be to preside and keep order while jurymen, untrained in the law, would determine questions affecting life, liberty, or property according to such legal principles as, in their judgment, were applicable to the particular case being tried. * * * But upon principle, where the matter is not controlled by express constitutional or statutory provisions, it cannot be regarded as the right of counsel to dispute before the jury the law as declared by the court. * * * We must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence.

*Moylan*, 417 F.2d at 1006-07 (1969).

The *Moylan* Court is not the only Fourth Circuit decision barring efforts by defendants to achieve nullification. In *United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996), the Fourth Circuit held, "[A] defendant is not entitled to inform the jury that it can acquit him on grounds other than the facts in evidence, i.e. a jury has the power of nullification but defense counsel is not entitled to urge the jury to exercise this power." *See, e.g., United States v. Walsh*, 654 F.App'x. 689, 696–97 (6th Cir. 2016) (affirming trial court's refusal to allow the defense to argue the legitimacy of federal marijuana laws); *United States v. Gorham*, 523 F.2d 1088, 1097–98 (D.C. Cir. 1975) (affirming a trial court order precluding defense evidence that might encourage a "conscience verdict" of acquittal); *United States v. Penn*, 969 F.3d 450, 458 (5th Cir. 2020) (noting that evidence sought to be admitted solely for nullification is irrelevant and inadmissible); *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006) (holding that a defense unsupported by credible evidence should not be submitted to a jury since it invites improper jury nullification).

## I. The Court Should Preclude Claims of Selective or Vindictive Prosecution, or Outrageous Government Conduct

It is long-settled law that claims of improper conduct on the part of the government offer no defense to the criminal charges and are not relevant to the merits of the charges. The

Government's decision to prosecute the Defendants rests entirely within its purview. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) (holding that "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute") (citing *United States v. Goodwin*, 457 U.S. 368, 380 n. 11 (1982)). A claim of improper prosecutorial motive or purpose, whatever its grounds, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Because a selective prosecution claim is one based on defects "in the institution of the prosecution," it must be asserted before trial. Fed. R. Crim. P. 12(b)(1); *see, e.g., United States v. Edwards*, 188 F.3d 230, 237 (4th 1999).

In this case, the Defendants have not filed a pretrial motion seeking the dismissal of the Information because of alleged selective or vindictive prosecution or outrageous government conduct. The only proper means of resolving them is to file pretrial motions making such claims. Filling these pretrial motions based on selective or vindictive prosecution or outrageous government conduct would require the Defendants to support these accusations and have them tested in court. To the extent the Defendants attempt to assert selective or vindictive prosecution or outrageous government conduct claims to the jury at trial, they should be precluded because these claims are irrelevant to the merits of the criminal case. Suggesting to the jury that alleged misconduct provides a basis for acquittal is a prohibited invitation for jury nullification. For example, as noted above, Defendant Morrow stated "they just want to make an example out of me" and her defense attorney Xavier de Janon said "I think there is a national pattern specifically on immigration and anti-immigration protests around the country, where charges are being thrown at protesters, ICE documenters, people who are just there, people who are part of organizations."

Such comments are clearly aimed to inflame and confuse jurors and "serenade a jury with the siren song of nullification." *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993).

There are numerous ways the Defendants in this case could attempt, either directly or indirectly, to improperly argue alleged government misconduct as a defense. For example, the Defendants might improperly suggest to the jury that the government's investigation or prosecution was vindictive or abusive or otherwise improper and thus violated legal or ethical requirements. Similarly, they may argue that the Defendants have been charged while other individuals who engaged in the same conduct were not. This would have no bearing on the elements of the charges and is therefore irrelevant. *See United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (finding that whether another individual was charged with the same crime as the defendant did "not make the facts relating to [defendant's] knowledge and participation in the [crime] more or less probable" and affirming exclusion of such argument at trial). Therefore, any attempts by the Defendants to introduce these claims during trial would be improper and should be precluded.

The Defendants are free to argue that the evidence presented at trial is insufficient to support a guilty verdict on the counts charged. But they should not be permitted to make arguments or introduce evidence that are irrelevant to the elements of the charged offenses and are designed to promote jury nullification.

## II. The Court Should Preclude Evidence or Argument Regarding the Potential Consequences or Penalties Upon Conviction or Impact of a Conviction on a Defendant or Defendant's Family

The Defendants should be precluded from introducing evidence, making an argument, or otherwise mentioning the potential penalties they face if convicted and the effects of a conviction on the Defendants or their families. "It is well established that when a jury has no sentencing

function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) citing *Rogers v. United States*, 422 U.S. 35, 40 (1975). Comments regarding the possible punishments that a defendant could face if convicted invite jury nullification. *United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir.), *cert. denied*, 400 U.S. 829 (1970) ("To inform the jury concerning matters relating to disposition of the defendant, tend to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided." (internal quotation and punctuation omitted)).

The Fourth Circuit has held that courts not only are permitted to but, in fact, *must* restrain such commentary. *United States v. Ramantanin*, 452 F.2d 670, 672 (4th Cir. 1971) (finding that the Court interruption of defense counsel's comments on the government's efforts to jail the defendant "was not only proper, but was required in the light of the improper remarks of defense counsel")' s*ee also Muse*, 83 F.3d 672, 676-77 (4th Cir. 1996); *United States v. Briscoe*, 574.2d 406, 408 (8th Cir. 1978) ("The penalty to be imposed upon a convicted defendant is generally not a matter for the jury…"); *United States v. D'Arco*, 1991 WL 264504 at *4 (N.D. Ill. Oct. 24, 1991) (holding that "no testimony or argument will be allowed regarding the impact of the trial or possible conviction upon a family member"); *United States v. Shields*, 783 F. Supp. 1094, 1096 (N.D. Ill. 1991) (granting motion *in limine* precluding "any testimony regarding the possible impact which a conviction might have upon any family member").

Although the law prohibiting such references to potential penalties is especially clear, the Government respectfully requests that the Court be vigilant as to questions or arguments about the potential punishment the Defendants face.  It would be improper for the Defendants to argue to the jury that it should consider potential punishments when determining their guilt or innocence.

**III.  The Court Should Preclude the Defendants from Presenting Evidence or Argument about Policy or Political Considerations Concerning the Administration's Immigration Policies or Enforcement Efforts**

The United States anticipates that the Defendants may seek to argue, reference, or otherwise elicit testimony or present evidence about the Administration's immigration policies and enforcement efforts.  The Court should preclude the Defendants from admitting evidence or making argument about policy or political considerations concerning the Administration's immigration policies or enforcement efforts, or the Defendants' policy or political viewpoints and affiliations.  It is simply not relevant to the jury's determination.  These topics have dominated the news cycle and concern individuals other than the Defendants and the evidence in this case.  This reporting has generated strong reactions from the public, both positive and negative.  The policy and political considerations behind the efforts are not relevant to the conduct charged and should not be litigated in front of a jury.  These issues do not relate to this trial or the four charges against Stanley and Morrow, and any attempt to introduce evidence or argument on these issues is immaterial and solely for the purpose of jury nullification.

The Court "'retains broad discretion to control cross-examination'" and may prohibit the Defendants from presenting inadmissible evidence or argument.  *United States v. Sutton*, 2024 WL 278070, at ** 11-12 (slip op.) (D.D.C. Jan. 25, 2024) (quoting *United States v. Hemphill*, 514 F.3d 1350, 1360 (D.C. Cir. 2008)); *United States v. Anderson*, 881 F.3d 1128, 1138-39 (D.C. Cir. 1989). This is true, because "[a]lthough criminal defendants have a right to present a defense, courts are not required to permit defendants to present to the jury evidence that is not admissible because it is not relevant or probative of a fact of consequence.  *Id*. at *11 (citing *United States v. Yousef*, 327 F.3d 56, 128 (2d Cir. 2003); *United States v. Libby*, 467 F. Supp. 2d 20, 27 (D.D.C. 2007).

The policy or political consideration behind the enforcement efforts are not relevant to any of the elements of the offense. Any examination that probes into these issues would be improper. *See United States v. Biden*, 2004 WL 3892623, at *2 (D.Del. June 2, 2024) ("[S]ubmission regarding any witnesses' political bias are excluded from introduction or admission at trial because such questioning, testimony, evidence or argument is not relevant, is unduly prejudicial and invites nullification."); *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (holding that defendant's argument that indictment was a political instrument was extraneous and collateral to the charged conduct and evidence of it would have delayed the trial and confused the issues, and was therefore properly excluded under Rule 403.); *United States v. Trinidad-Nova*, 816 F. Supp. 3d 245, 253 (D.P.R. 2026) (precluding "arguments about immigration policies."); *United States v. Dugan*, 2025 WL 3301760, at *1 (E.D. Wis. Noc. 25, 2025) (precluding arguments concerning "disagreement with immigration policy and enforcement."). Thus, only evidence and argument relevant to the elements of the charged offenses can be properly admitted at trial.[1]

Therefore, the Court should exclude any evidence or arguments concerning the Administration's immigration policy and enforcement efforts that are irrelevant to the elements of the charged offenses and instead designed to promote jury nullification.

## IV. The Court Should Preclude the Defendants from Presenting Evidence or Argument That Their Conduct was Constitutionally Protected Activity

The United States moves to preclude the Defendants from eliciting or arguing to the jury that their conduct was a constitutionally protected activity or the Constitution provides a defense to the crimes charged. The Defendants did not raise this issue in any Rule 12 motion and have not yet affirmatively raised this defense. However, Defendant Morrow and her defense counsel have

---

[1] To the extent, however, that evidence concerning immigration enforcement is relevant to the Defendants' alleged motive, intent, or the context in which statements were made, the Court can address specific objections as they arise.

made public statements that cause the United States to envision an argument that the Defendants believe they collectively organized and engaged in a lawful expression of their personal beliefs and that the Government has charged them with offenses for engaging in conduct that is protected by the First Amendment.

The Defendants have been charged for their actions, not for statements they made or beliefs they hold. The First Amendment is not a defense because the charged offenses do not criminalize speech. "Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message." *United States v. Gregg*, 226 F.3d 253, 267-268 (3d Cir. 2000). Even conduct which is not outright violent but which physically "obstructs or unreasonably interferes" with official functions of government business loses its First Amendment protection. *Cameron v. Johnson*, 390 U.S. 611, 617 (1968) (finding that a picket demonstration which physically blocked ingress or egress from a courthouse was not protected by the First Amendment); *see also Cox v. Louisiana*, 379 U.S. 535, 555 (1965) (physical "cordon" of a street or a public or private building by demonstrators who refused to let anyone pass if they "did not agree to listen to their exhortations."); *United States v. Baez*, No. 21-0507, 2023 WL 6364648. At *8-9 (D.D.C. Sept. 29, 2023) (precluding argument before the jury regarding First Amendment right to protest, and selective prosecution, as these arguments "would inappropriately shift the responsibility for making determinations of law from the Court to the jury" and potentially invite jury nullification); *United States v. Segui*, No. 19-188, 2019 WL 8587291, at *14 (E.D.N.Y. Dec. 2, 2019) (granting government's motion to preclude argument regarding First Amendment before jury in part because defendant conceded such argument was a legal question for the court rather than the jury).

Importantly, the First Amendment is not a defense to criminal conduct. That some aspect of an individual's conduct was protected by the First Amendment does not negate criminal action for their unprotected conduct because "when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). That is to say that even if a defendant is engaged in speech that is protected, when their actions turn physically obstructive or outright violent, the First Amendment ceases to protect the speech itself because the government has a legitimate interest in preventing or stopping violent conduct. *Id.*; *see also Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972).

If the United States establishes the elements of any of the offenses with which the Defendants are charged, the First Amendment provides no defense, even if evidence of the Defendants' crimes are intertwined with political discussion and rhetoric. *See United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of the defendants' conversations about political and religious matters, the conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it."); *see also United States v. Hassan*, 742 F.3d 104, 127–28 (4th Cir. 2014) (citing *Amawi*). Accordingly, any line of cross-examination or argument the Defendants may wish to make regarding the First Amendment is irrelevant because it lacks a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, and because the Defendants are not entitled to a First Amendment defense as a matter of law. The Court should exclude any questioning and argument along those lines under Fed. R. Evid. 403. Any attempt to shift the jury's

attention to questions about whether the Defendants' statements were protected by the First Amendment, rather than the charged offenses risks confusing the issues, wasting time, and unfairly prejudicing the jury.

## **CONCLUSION**

Accordingly, for the reasons set forth above, the Government respectfully requests that the Court prevent jury nullification and the mischaracterization of trial issues by precluding (1) arguments of vindictive or selective prosecution; (2) reference to punishment or collateral consequences of conviction; (3) presenting evidence or argument about policy or political considerations concerning the Administration's immigration policies or enforcement efforts; and (4) arguments that their speech and/or conduct was First Amendment protected activity and that the First Amendment provides a legal defense for their criminal conduct.

RESPECTFULLY SUBMITTED this 29th day of July, 2026.

DALLAS KAPLAN
First Assistant United States Attorney
*Attorney for the United States, Acting Under*
*Authority Conferred by 28 U.S.C. § 515*

/s/ Kenneth Smith
KENNETH SMITH
Assistant United States Attorney
North Carolina Bar Number 17934
Kenny.Smith@usdoj.gov

/s/ Caryn Finley
Caryn Finley
Assistant United States Attorney
New York Bar Number 3953882
Caryn.Finley@usdoj.gov

United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
704-244-6222