IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO.: 3:25mj320-MEO |
| | ) | |
| v. | ) | **UNITED STATES' RESPONSE TO** |
| | ) | **DEFENDANTS' MOTION TO DISMISS** |
| WILLIAM STANLEY and | ) | **COUNT 4 FOR DUPLICITY AND** |
| HEATHER MORROW | ) | **LACK OF SPECIFICITY, AND IN THE** |
| | ) | **ALTERNATIVE, A MOTION FOR A** |
| | ) | **BILL OF PARTICULARS** |
| | ) | |

NOW COMES the United States of America, by and through Dallas Kaplan, First Assistant United States Attorney, Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515, and hereby responds to the defendants, William Stanley and Heather Morrow ("Defendants"), motion to dismiss Count 4 for duplicity and lack of specificity and in the alternative, a motion for a bill of particulars. Doc. 57. The Defendants' arguments are not supported by the law, and their motion should be denied.

## FACTUAL BACKGROUND

Defendant Stanley and Defendant Morrow are charged with obstructing the use of entrances on federal property, in violation of 40 U.S.C. § 1315, 41 C.F.R. § 102-74.365, 41 C.F.R. § 102-74.390(b), 41 C.F.R. §102-74.450, and 18 U.S.C. § 2; impeding and disrupting the performance of official duties of government employees, in violation of 40 U.S.C. § 1315, 41 C.F.R. § 102-74.365, 41 C.F.R. § 102-74.390(c), 41 C.F.R. §102-74.450, and 18 U.S.C. § 2; failure to comply with lawful direction of authorized individuals, in violation of 40 U.S.C. § 1315, 41 C.F.R. § 102-74.365, 41 C.F.R. § 102-74.385, 41 C.F.R. §102-74.450, and 18 U.S.C. § 2; and assaulting, resisting, opposing, impeding, intimidating, and interfering with persons performing official duties, in violation of 18 U.S.C. §§ 111(a)(1) and 2. Doc. 1.

1

On the early morning of November 16, 2025, Defendant Morrow and Defendant Stanley gathered at the U.S. Immigration & Customs Enforcement (ICE)/Enforcement & Removal Operations (ERO) Office facility located at 6130 Tyvola Centre Drive, Charlotte, North Carolina (the Office). A blue Subaru Outback was parked in the vicinity of the exit lane to the property and blocked the flow of traffic leaving the Office. The Defendants and others were attempting to block the entrance lane to the Office with their physical bodies and cones that were spaced across the entrance lane.

ERO Deportation Officer (DO) 1 (DO1) arrived at the Office driving his government issued vehicle, a gray Dodge Ram truck with installed emergency equipment. He was dressed in civilian attire. As he pulled his vehicle into the Office, he was hindered from proceeding any further because of the cones and the Defendants blocking the entrance lane. DO1 activated his emergency lights and used his vehicle's installed public address (PA) system to advise the Defendants that they were impeding the flow of traffic and if they did not move, they would be arrested. DO1 gave this command several times to the Defendants but they failed to follow his commands and did not move.

ERO DO2 arrived at the Office behind DO1 in his government issued vehicle, a blue pickup truck. He also observed the Defendants blocking the entrance and exit lanes. DO2 exited his vehicle and heard DO1 giving commands to the Defendants through his PA system. DO2 was wearing a law enforcement tactical vest with "ERO" in yellow letters in the center of the vest and an embroidered ICE badge affixed to the left shoulder of the vest. DO2 approached the Defendants, pulled out his oleoresin capsicum (OC) spray and warned them they would be sprayed and arrested if they did not leave the property.

ERO DO3 and ERO DO4 were riding together in DO3's government issued vehicle, a black Dodge Caravan, and arrived at the Office behind DO2. After observing DO2's interactions with the Defendants, DO3 and DO4 exited their vehicle. At this point, the Defendants had moved enough that DO1 was able to move his vehicle forward. As DO1 was driving slowly towards the side of the Office, Defendant Stanley walked to the front of his vehicle and placed his body in front of it, hindering it from moving any further. After DO1 stopped his vehicle, Defendant Stanley ran up to the driver's side door and hit the window with his fist. DO1 exited his vehicle and advised Defendant Stanley that he was under arrest. DO1 attempted to place Defendant Stanley in custody, however, Defendant Stanley resisted and pulled away from DO1.

DO3 observed DO1's struggle to place Defendant Stanley in custody because of the Defendant's resisting. As DO1 was struggling to place Defendant Stanley into custody, he felt someone grabbing his shoulders. DO2 and DO4 observed Defendant Morrow grabbing DO1's shoulders from behind. DO1 had his back to Defendant Morrow. DO4 believed that DO1 was armed and worried that Defendant Morrow may have been going for DO1's weapon. Fearing for DO1's safety, DO4 rushed to grab Defendant Morrow and take her into custody with the assistance of DO2. DO1 and DO3 were able to take Defendant Stanley into custody, despite his continued resistance.

On November 17, 2025, the government charged Morrow by Criminal Complaint with violations of 18 U.S.C. § 111(a)(1) (Felony Assault, Resist, and Impede a Federal Officer). 3:25MJ305, Doc. 3. Defendant Stanley was not charged in the Complaint. On November 24, 2025, the government moved to dismiss this Criminal Complaint *Id*. at Doc. 17. On the same day, November 24, 2025, Stanley and Morrow were charged by Bill of Information with violations of

40 U.S.C. § 1315, 41 C.F.R. § 102-74.365, 41 C.F.R. § 102-74.385, 41 C.F.R. § 102-74.390, 41 C.F.R. §102-74.450, and 18 U.S.C. § 111(a)(1) and 2. Doc. 1.

**<u>DISCUSSION</u>**

**I.       Count 4 is Not Duplicitous and Should Not Be Dismissed**

Count 4 of the Indictment is not duplicitous and should not be dismissed.  The Bill of Information merely enumerates several ways of committing the offense – assaulting, resisting, opposing, impeding, intimidating, and interfering with persons performing official duties, and the United States may charge in the conjunctive but prove guilt of the defendant in the disjunctive.

It is not duplicitous to allege alternate means in a single count. Rule 7(c)(1) of the Federal Rule of Criminal Procedure provides that "[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means." *See Schad v. Arizona*, 501 U.S. 624, 631 (1991). Furthermore, "[]it is well established that when the Government charges in the conjunctive, and the statute is worded in the disjunctive, the district court can instruct the jury in the disjunctive." *United States v. Perry*, 560 F.3d 246, 256 (4th Cir. 2009); *United States v. Montgomery,* 262 F.3d 233, 242 (4th Cir.2001); *United States v. Champion,* 387 F.2d 561, 563 n. 6 (4th Cir. 1967). It is equally well-established that "that a conviction under a statute that specifies several alternative ways to commit an offense will stand as long as the record evidence suffices to prove one or more of the means of commission, even if the indictment alleged the several ways in conjunction." *United States v. Miselis*, 972 F.3d 518, 547 (4th Cir. 2020) (internal quotations omitted).

The Fourth Circuit has held that an indictment charging alternate means of violating Section 111 is not duplicitous.  *United States v. Briley*, 770 F.3d 267 (4th Cir. 2014), held that Congress created the single crime of harming or threatening a federal official and specified *six*

4

*ways* by which the crime could be committed. *Id*. at 274 (Section 111 prohibits the six different kinds of enumerated acts ["forcibly assault, resists, opposes, impeded, intimidates, or interferes with …] and [] specifically, the misdemeanor provision is not limited to assault.").

In *Briley*, the Fourth Circuit addressed the Defendants' argument that "Congress intended to proscribe six separate "forcible" acts" and therefore "created six different forms of criminal conduct that constitute separate federal offenses." Doc. 57 at p. 3.

> Second, and relatedly, Briley's assessment of § 111 wanders too far from congressional intent. Congress enumerated these six verbs in the disjunctive. Why would Congress, in the same subsection, then swiftly render five of these verbs extraneous or defunct? The statute, moreover, consistently references the same set of all six alternative verbs for each penalty provision—"the acts in violation of this section" for the misdemeanor in § 111(a), "such acts" for the lesser felonies in § 111(a), and "any acts described in subsection (a)" for the greater felonies in § 111(b). Those phrases obviously denote all six verbs. Why would Congress repeatedly refer back to the same list of threshold acts for every designated offense, and yet covertly assign varying acts to different crimes? The obvious answer is that Congress had no such intention: a person could commit any one of these six acts and still fall under the statute's coverage.

Moreover, the Second, Fifth, Eighth, Ninth, and Eleventh Circuits have all specifically held that an indictment charging a violation of 18 U.S.C. § 111(a)(1) that alleges all six verbs is not duplicitous. *United States v. McIntosh*, 753 F.3d 388, 393 (2d Cir. 2014) ("We conclude that the different types of conduct proscribed by Section 111(a) ... are not separate offenses ... rather, they describe different means of committing a single crime."); *United States v. Street*, 66 F.3d 969, 974-75 (8th Cir. 1995) ("Section 111(a)(1) defines a single crime, not multiple offenses."); *United States v. Chapman*, 528 F.3d 1215, 1220-21 (9th Cir. 2008) (the only reasonable interpretation of § 111(a) is that "convictions under this statute require at least some form of assault" and without an assault, a charge of "passive resistance" or the other listed conduct is insufficient to convict under the statute.); *United States v. Brooks*, 670 F.2d 148, 153 (11th Cir. 1982) (finding jury

instructions in the disjunctive for § 111(a) were not erroneous because the fact that the indictment alleged both impeding and interfering did not render indictment duplicitous) (citing *Cunningham v. United States*, 356 F.2d 454, 455-56 (5th Cir. 1966) ) ("The fact that the indictment also alleged impeding and interfering neither renders the indictment bad for duplicity nor precludes a conviction if only one of the several allegations linked in the conjunctive in the indictment is proven.").

The Fourth Circuit has also held that "[]it is well established that when the Government charges in the conjunctive, and the statute is worded in the disjunctive, the district court can instruct the jury in the disjunctive." *United States v. Perry*, 560 F.3d 246, 256 (4th Cir. 2009); *United States v. Montgomery,* 262 F.3d 233, 242 (4th Cir.2001); *United States v. Champion,* 387 F.2d 561, 563 n. 6 (4th Cir.1967)

Defendant Morrow and Defendant Stanley further argue that Count Four "accuses Defendant of committing the six separate offenses against numerous "Officers," with no clarity on how many alleged victims there are." Doc. 57 at 3. However, units of prosecution under Section 111 are determined by the number of distinguishable acts of assault, not the number of officers assaulted. *Ladner v. United States*, 358 U.S. 169 (1958). In *Ladner*, the defendant injured two federal officers with the single discharge of a shotgun, and the Supreme Court held it constituted a single assault. 358 U.S. at 178; *see also United States v. Thomas*, 669 F.3d 421 (4th Cir. 2012) (defendant committed multiple acts, both verbally threatening and later punching the officer following significant intervening acts); *United States v. Alverez*, 445 F. Appx 715 (4th Cir. 2011) (unpublished) (holding that conviction of two counts of assaulting a law enforcement officer was error where defendant committed only one assaultive act when he ran his vehicle into one car containing two DEA agents).

Therefore, for the foregoing reasons, the Defendants' motion to dismiss Count 4 should be denied because it is not duplicitous, is properly plead in the conjunctive, and does not charge multiple units of prosecution in one count.

**II.     The Bill of Information Complies with Fed. R. Crim. P. 7(c)(1) and Identifies the Specific Charge, Victim, Force, and Agency**

The Defendants next argue that Count 4 lacks specificity and "fails to apprise them of what they must defend against." Doc. 57 at p. 4. A charging document "must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997) (quoting *United States v. Daniels*, 973 F.3d 272, 274 (4th Cir. 1992)); Fed. R. Crim. P. 7(c)(1). As long as the indictment alleges "an offense in the words of the statute" and sets forth the elements of the statute, it is sufficient. *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999); *Hamling v. United States*, 418 U.S. 87 (1974). It "need not inform [a defendant] point-by-point of the manner in which the government will prove its case." *United States v. Bradley*, 917 F.3d 493, 504 (6th Cir. 2019); *United States v. Simmons*, 96 U.S. 360, 363-64 (1877) (an indictment does not have to state "the special means employed to effect the unlawful" conduct, so long as "the very essence of the offense" is clear.).

The question before the Court now is not whether the United States has sufficient evidence to prove Morrow's guilt beyond a reasonable doubt at trial. Rather, it is whether the Bill of Information informs the Defendants of the charges against them. The Bill of Information sets forth the elements of 18 U.S.C. § 111(a) and provides Defendant Morrow and Defendant Stanley with sufficient notice of what they must defend against – the date (November 16, 2025), the location (Mecklenburg County), the alleged acts (forcibly assault, resist, oppose, impede, intimidate, and interfere), and the alleged victims and their occupation (Enforcement and Removal Operations

Deportation Officers). Count 4 substantially follows the language of the charging statute and sufficiently alerts Morrow and Stanley to the nature of the charges against them, specifically the misdemeanor prong of 18 U.S.C. § 111(a)(1) (such acts constituting only simple assault). Therefore, the Bill of Information should not be dismissed for lack of specificity.

### III. The Bill of Information Tracks the Statutory Language and in Combination with Discovery Minimizes Surprise at Trial

In the alternative, the Defendants argue that the Court should order the government to file a bill of particulars because she "does not know how many and what offenses she is facing." Doc. 57 at p. 6. The Court should deny the Defendants' motion for a bill of particulars because the Bill of Information provides Defendant Morrow and Defendant Stanley with enough insight to enable them to prepare their defense. The Defendant's true complaint seems to be that the Bill of Information's allegations are too vague for them to prepare for trial. They claim that the Bill of Information "fails to apprise Defendant what she must defend against." Doc. 57 at p. 4.

Pursuant to Federal Rule of Criminal Procedure 7(f), a Court may order the United States to file a bill of particulars. "The purpose of a bill of particulars is to inform the defendant of the charges against him in sufficient detail and to minimize surprise at trial." *United States v. Butler*, 885 F.2d 195, 199 (4th Cir. 1989) (internal quotations omitted). As a general rule, a bill of particulars is not required when the "indictment tracked the statutory language and cited the charging statutes." *United States v. Leahy*, 598 Fed. Appx. 210, 212 (4th Cir. 2015). "A defendant is not entitled to a bill of particulars where the necessary information can be found in the Indictment, or is available to him through discovery or other sources." *United States v. Thorbourne*, 2018 WL 9597132, at *1 (W.D.N.C. Mar. 14, 2018). "It is well established that expanded file discovery precludes any need for a Bill of Particulars because a defendant with access to such expansive discovery may not claim surprise." *United States v. Swain*, 2019 WL

8

1763249, at *3 (W.D.N.C. Apr. 22, 2019); *see also United States v. Amend*, 791 F. 2d 1120, 1125-26 (4th Cir. 1986) ("Here, the government's open file policy provided [the defendant] with access to all information in the government's possession and with adequate notice").

The United States submits that the Defendants are really asking *how* the Government is going to prove their guilt. However, a motion for a bill of particulars is not a mechanism to understand how the government intends to present its proof at trial. *United States v. Automated Med. Labs, Inc.*, 770 F.2d 399, 405 (4th Cir. 1985) ("a bill of particulars is not to be used to provide detailed disclosure of the government's evidence in advance of trial"). The selection and presentation of evidence to prove the "how" at trial is not subject to disclosure. *United States v. Stroop*, 121 F.R.D. 269, 272 (E.D.N.C. 1988) ("a defendant is not entitled to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix irrevocably the perimeters of its case in advance of trial"). The purpose of a bill of particulars is to minimize surprise at trial.

Critically, even if a charging document alone could not limit surprises at trial, a defendant is not entitled to a bill of particulars if the information is otherwise available through discovery or other sources. *Thorbourne*, 2018 WL 9597132, at *1. In this case, the United States provided substantial discovery to the Defendants. For example, the Defendant complains that she does not know what agency or department is being referred to under "Enforcement and Removal Operations Deportation Officer." The United States produced memoranda of interview of several Deportation Officers that were involved in the conduct alleged in the Bill of Information. *See i.e.,* Government's Discovery, Bates USA_00000015, USA_00000017, USA_00000020. They are identified by name, title (Deportation Officer – Enforcement Removal Operations (ERO)), and agency (U.S. Immigration and Customs Enforcement (ICE)/ERO Field Office). And, critically,

the Defendants understand what agency or department is being referred to, and who the witnesses are, because they issued *Touhy* subpoenas to the agency for these specific employees. Further, these memoranda also describe the Defendants' actions on November 16, 2025, and discovery also contained a video of the conduct alleged in Count 4 and other supporting evidence. Certainly, discovery provided in this case provides sufficient notice to the Defendants of what they must defend against. Ultimately, the Bill of Information and comprehensive discovery ensures that surprise is not an issue here and their motion for a bill of particulars should be denied.

RESPECTFULLY SUBMITTED this 5th day of August, 2026.

DALLAS KAPLAN
First Assistant United States Attorney
*Attorney for the United States, Acting Under*
*Authority Conferred by 28 U.S.C. § 515*

_____/s/ Kenneth Smith_____
KENNETH SMITH
Assistant United States Attorney
North Carolina Bar Number 17934
Kenny.Smith@usdoj.gov

_____/s/ Caryn Finley_____
Caryn Finley
Assistant United States Attorney
New York Bar Number 3953882
Caryn.Finley@usdoj.gov

United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
704-244-6222