IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:25MJ320-MEO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **GOVERNMENT'S RESPONSE TO** |
| v. | ) | **MOTION FOR SANCTIONS** |
| | ) | |
| WILLIAM STANLEY and | ) | |
| HEATHER MORROW | ) | |
| | ) | |

The United States of America, by and through Dallas J. E. Kaplan, Attorney for the United States pursuant to 28 U.S.C. § 515, responds to Defendant Morrow's Motion for Sanctions (Including Dismissal) for the Destruction of Exculpatory Evidence and Misrepresentations by Federal Agents in Sworn Documents Used to Obtain an Arrest Warrant (Motion for Sanctions). Doc. 55.[1]

The Court should deny the Defendant's Motion for Sanctions in all respects because she has not and cannot show that the alleged spoliation of evidence constituted a due process violation under *United States v. Perry*, 92 F.4th 500, 513 (4th Cir. 2024). In the instant case, the investigating agents did not fail to preserve the surveillance videotape because they believed it may exonerate the Defendant. Evidence that is comparable – and perhaps better – than the missing surveillance tape exists. Also, the Court should deny the Defendant's motion to dismiss the case because of statements in an affidavit that supported a Criminal Complaint that the government dismissed several months ago.

**FACTUAL BACKGROUND**

The Bill of Information (Document 1) charges Defendant William Stanley and Defendant Heather Morrow (collectively Defendants) with four criminal violations:

---

[1] Defendant Stanley has joined in this Motion.

1

- obstructing the use of entrances on federal property, in violation of 40 U.S.C. § 1315, 41 C.F.R. § 102-74.365, 41 C.F.R. § 102-74.390(b), 41 C.F.R. §102-74.450, and 18 U.S.C. § 2;

- impeding and disrupting the performance of official duties of government employees, in violation of 40 U.S.C. § 1315, 41 C.F.R. § 102-74.365, 41 C.F.R. § 102-74.390(c), 41 C.F.R. §102-74.450, and 18 U.S.C. § 2;

- failure to comply with lawful direction of authorized individuals, in violation of 40 U.S.C. § 1315, 41 C.F.R. § 102-74.365, 41 C.F.R. § 102-74.385, 41 C.F.R. §102-74.450, and 18 U.S.C. § 2; and

- assaulting, resisting, opposing, impeding, intimidating, and interfering with persons performing official duties, in violation of 18 U.S.C. §§ 111(a)(1) and 2. (Doc. 1).

These charges arise from an encounter that occurred on the early Sunday morning of November 16, 2025. Defendant Morrow and Defendant Stanley, as well as a few other people, gathered at the U.S. Immigration & Customs Enforcement (ICE)/Enforcement & Removal Operations (ERO) Office located at 6130 Tyvola Centre Drive, Charlotte, North Carolina (the Office). A blue Subaru Outback, later identified as a vehicle driven by Defendant Morrow, was parked near the exit lane to the government property and blocked the flow of traffic leaving the Office. The Defendants and others were attempting to block the entrance lane to the Office with their physical bodies and cones that were spaced across the entrance lane.

ERO Deportation Officer (DO) 1 (DO1) arrived at the Office driving his government issued vehicle, a gray Dodge Ram truck with installed emergency equipment. He was dressed in civilian attire. As he pulled his vehicle into the Office, he was hindered from proceeding any further because of the cones and the Defendants blocking the entrance lane. DO1 activated his emergency

2

lights and used his vehicle's installed public address (PA) system to advise the Defendants that they were impeding the flow of traffic and if they did not move, they would be arrested. DO1 gave this command several times to the Defendants but they failed to follow his commands and did not move.

ERO DO2 arrived at the Office behind DO1 in his government issued vehicle, a blue pickup truck. He also observed the Defendants blocking the entrance and exit lanes. DO2 exited his vehicle and heard DO1 giving commands to the Defendants through his PA system. DO2 was wearing a law enforcement tactical vest with "ERO" in yellow letters in the center of the vest and an embroidered ICE badge affixed to the left shoulder of the vest. DO2 approached the Defendants, pulled out his oleoresin capsicum (OC) spray and warned them they would be sprayed and arrested if they did not leave the property.

ERO DO3 and ERO DO4 were riding together in DO3's government issued vehicle, a black Dodge Caravan, and arrived at the Office behind DO2. After observing DO2's interactions with the Defendants, DO3 and DO4 exited their vehicle. At this point, the Defendants had moved enough that DO1 was able to move his vehicle forward. As DO1 was driving slowly towards the side of the Office, Defendant Stanley walked to the front of his vehicle and placed his body in front of it, hindering it from moving any further. After DO1 stopped his vehicle, Defendant Stanley ran up to the driver's side door and hit the window with his fist. DO1 exited his vehicle and advised Defendant Stanley that he was under arrest. DO1 attempted to place Defendant Stanley in custody, however, Defendant Stanley resisted and pulled away from DO1.

DO3 observed DO1's struggle to place Defendant Stanley in custody because of the Defendant's resisting. As DO1 was struggling to place Defendant Stanley into custody, he felt someone grabbing his shoulders. DO2 and DO4 observed Defendant Morrow grabbing DO1's

shoulders from behind. DO1 had his back to Defendant Morrow. DO4 believed that DO1 was armed and worried that Defendant Morrow may have been going for DO1's weapon. Fearing for DO1's safety, DO4 rushed to grab Defendant Morrow and take her into custody with the assistance of DO2. DO1 and DO3 were able to take Defendant Stanley into custody, despite his continued resistance.

On November 17, 2025, the government charged Morrow by Criminal Complaint with violations of 18 U.S.C. § 111(a)(1) (Felony Assault, Resist, and Impede a Federal Officer). 3:25MJ305, Doc. 3. Defendant Stanley was not charged in the Complaint. On November 24, 2025, the government moved to dismiss this Criminal Complaint *Id*. at Doc. 17. On the same day, November 24, 2025, Stanley and Morrow were charged by Bill of Information with four criminal violations. (Document 1).

After the November 17, 2025, Complaint against Morrow was filed, she produced a videotape taken by a fellow protester during the encounter between ICE Deportation Officers and the Defendants on November 16, 2025. The ICE Office had surveillance cameras that may have captured the encounter and what occurred when the Defendants and other protesters first arrived that early morning. The investigative agency in this matter is the Federal Bureau of Investigation (FBI), not ICE. On November 19, 2025, days after the incident, an FBI Special Agent spoke with the ICE employee most familiar with the surveillance camera system and requested him to provide footage from its surveillance tapes. Accessing the camera surveillance system in a secure location in the ICE office, the ICE employee showed the FBI Special Agent surveillance footage taken around the time of the encounter between the Defendants and the deportation officers. The FBI Special Agent thought that the surveillance tape could help the government's case, and he requested that the ICE employee contact the surveillance camera company that monitored the ICE

4

Office and obtain footage related to the November 16, 2025, incident. The FBI's request to ICE was timely and reasonable, and it had no notice or reason to suspect that ICE would not take steps to satisfy this simple request. The FBI never possessed or had access to the surveillance tape, and it never had the means to preserve it.

In addition to the requests made by the FBI Special Agent to ICE to obtain the surveillance camera footage, the United States Attorney's Office and defense counsel have communicated with ICE and made similar requests through subpoenas and informal requests. A May 8, 2026, video conference call occurred between the parties and included a discussion about discovery issues; ICE Embedded Counsel was on the call. Nevertheless, ICE failed to contact the surveillance camera company in a timely manner, and, upon information and belief, the camera footage has been erased and no longer exists. As early as January 6, 2026, the United States made the Defendant aware of the government's efforts to obtain the surveillance camera footage.

On the evening of August 4, 2026, Defendant Stanley, in response to the government's motion for reciprocal discovery, produced to the United States multiple videos of the November 16, 2025, encounter between the Defendants and deportation officers.

In her Motion for Sanctions, Defendant Morrow moved the Court to dismiss the Bill of Information because the FBI agents had not preserved evidence that it knew was exculpatory. She claimed that a surveillance system at the ICE facility captured part of the encounter and that the tape could be relevant to whether the crimes occurred on federal property. Lastly, Defendant Morrow moved the Court to dismiss the Bill of Information in this case because the affidavit supporting a now-dismissed criminal complaint was based on questionable statements made by deportation officers.

<u>**LEGAL DISCUSSION**</u>

The Court should deny the Defendant's Motion for Sanctions because the Defendant has not met her burden of proving a due process violation occurred.  In *United States v. Perry*, 92 F.4th 500, 513 (4th Cir. 2024), the Fourth Circuit established the analytical framework applicable to motions for sanctions after the alleged deletion or destruction of evidence:

> Spoliation of evidence, or the destruction of or failure to preserve evidence, can be a due-process violation.  In order to rise to that level, however, the defendant must show that the unpreserved evidence had an exculpatory value that was apparent before the evidence was destroyed and of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. In addition, the defendant must establish that the police acted in bad faith in failing to preserve the evidence.  Thus, spoliation will only violate due process where the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant yet still failed to preserve it.  (citations and internal quotations omitted).

**A.  <u>The Unpreserved Videotape Was Not Exculpatory</u>**

Defendant Morrow has presented speculative and conclusory allegations about what the surveillance tape might have shown, and she has failed to meet her burden of showing how the unpreserved videotape was exculpatory and that no comparable evidence exists. Consequently, the Court should deny her motion to dismiss the indictment. *United States v. Gamble*,  697 F.Supp.1045, 1055 (D.Nev. 2023) (the dismissal of a charging document such as indictment or information requires knowledge of the exculpatory value of the lost evidence). In *California v. Trombetta*, 467 U.S. 479, 489 (1984), the Supreme Court stated that missing evidence will not rise to a constitutionally significant "exculpatory" level simply because it "might conceivably" help the defendant. In *Perry*, the Fourth Circuit required a defendant to show that "the unpreserved evidence had an exculpatory value that was apparent before the evidence was destroyed and was of such value that the defendant would be unable to obtain comparable evidence by other reasonably available means."  92 F.4th at 513.  In this case, the incident that led to the Bill of

6

Information appears on the videotape taken by one of the protesters accompanying the Defendants that early Sunday morning, and the Defendant has not shown how or why this additional videotape will exculpate her. At best, the unpreserved surveillance audio tape may have contained a different perspective of the encounter and what preceded it, but it is unlikely that this view would have a better visual or audio perspective than the one that captures the sights and sounds of what happened that day. *See United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (the court found that the erasure of a radio dispatch tape did not violate due process because neither the police department nor the United States Attorney's Office deemed the tape exculpatory); *Teal v. San Diego County,* 285 Fed.Appx. 335, 337 (9th Cir. 2008) (the court determined that no due process violation occurred when the defendant failed to establish a surveillance videotape that did not show the crime being committed had apparent exculpatory value before it was destroyed).

### B. Comparable Evidence Exists

The Defendant's Motion to Dismiss also fails because comparable evidence exists. The videos provided by the Defendants show what happened during the November 16, 2025, encounter at the ICE Office, and the Defendant cannot deny that she can obtain comparable evidence by "reasonably available means." *Perry*, 92 F.4th at 513. Therefore, no due process violation occurred with the spoliation of evidence.

### C. No Bad Faith Occurred

The Defendant attempts to create bad faith where none exists. In *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), the United States Supreme Court held that bad faith requires "the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." In this instance, no evidence supports the notion that the FBI agents indicated they believe that the surveillance tape would be exculpatory to the Defendant. In fact, the FBI Special

7

Agent requesting the surveillance footage from ICE thought the tape was inculpatory and supported the government's case against Morrow.

### D.  No Outrageous Conduct Occurred in This Case

Despite the Defendant's allegations that the FBI's inability to obtain the surveillance camera videos was "outrageous conduct," none of the actions of the investigating FBI agents was "unlawful, or otherwise shocking or offensive to the traditional notions of fundamental fairness," *United States v. Hasan,* 718 F.3d 338, 344-45 (4th Cir. 2013), and the Court should deny the motion to dismiss.  Before the surveillance camera footage was deleted, the FBI made a timely request to ICE to obtain it, but ICE failed to comply with their request. ICE's negligence in handling the FBI's timely request may be considered negligent, but negligence does not establish bad faith. *Youngblood*, 488 U.S. at 88.

### E.  No Adverse Inference Instruction Warranted

In addition to denying the Defendant's sanctions motion, it should not give an adverse inference or spoliation jury instruction to the jury during the trial.  Before a trial court gives this type of instruction, the defendant must show "that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *United States v. Johnson*, 996 F.3d 200, 206 (4th Cir. 2021) (*citing Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) (civil case).  In this case, the FBI agents did not lose or destroy any evidence, and no willful conduct on their parts occurred.  At worst, ICE personnel failed to contact the private company responsible for maintaining and recording what appears on the agency's surveillance cameras, but this negligence does not rise to the level of justifying an adverse inference or spoliation jury instruction.

8

**F. Seeking Dismissal Based on an Affidavit in A Case Already Dismissed Several Months Ago**

The Defendant continues to seek relief in a case that was dismissed several months ago. The United States dismissed the Criminal Complaint filed against the Defendant on November 24, 2025, yet the Defendant continues to litigate it in this matter to raise already resolved issues and generate publicity. To the extent problems existed with the affidavit in the prior criminal action, the United States took the corrective step of dismissing that case and the Defendant no longer faces a felony assault charge.

Contrary to the Defendant's argument, the instant case is not based on the same information as the earlier criminal action. The videos taken by a protester as well as other evidence provide factual support for this Bill of Information, and the deportation officers are under subpoena by the Defendants and thus expected to testify at trial. Dismissing the prior criminal case did not completely absolve the Defendants of responsibility for their criminal actions on November 16, 2025, and the United States exercised its prosecutorial discretion to file the instant Bill of Information against Defendants Morrow and Stanley. This Court should not dismiss this case and deny the Defendant's Motion.

**G. An Evidentiary Hearing Is Unnecessary**

Lastly, the government opposes Morrow's request for an evidentiary hearing. She has not alleged what information, if any, would be learned or developed at a hearing, and she has not given a reason why the Court cannot decide on the Motion on the parties' filings. The Court should not hold a hearing and avoid conducting a "broad or blind fishing expedition" that the United States

9

Supreme Court disfavors. *Jencks v. United States*, 353 U.S. 657, 667 (1957).

RESPECTFULLY SUBMITTED this the 5th day of August 2026.

DALLAS J. E. KAPLAN
ATTORNEY FOR THE UNITED STATES
PURSUANT TO 28 U.S.C. § 515

/s/ Kenneth Smith
North Carolina Bar Number 17934
E-mail: Kenny.Smith@usdoj.gov

/s/ Caryn Finley
New York Bar Number 3953882
E-mail: Caryn.Finley@usdoj.gov
United States Attorney's Office
Western District of North Carolina
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-622