# ATTACHMENT 1

530 Fed.Appx. 232
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of Appeals 4th Cir. Rule 32.1.
United States Court of Appeals, Fourth Circuit.

UNITED STATES of America, Plaintiff–Appellee,

v.

Carly AHLSTROM, Defendant–Appellant.

No. 12–4772
|
Argued: May 16, 2013.
|
Decided: June 24, 2013.

**Synopsis**
**Background:** Defendant was convicted in the United States District Court for the Eastern District of Virginia, Liam O'Grady, J., of driving while intoxicated, and she appealed.

**Holdings:** The Court of Appeals, Ellen Lipton Hollander, District Judge, sitting by designation, held that:

[1] officer had reasonable suspicion to stop defendant's vehicle, and

[2] there was sufficient evidence to prove that device was functioning accurately at time that breath alcohol test was administered.

Affirmed.

**Procedural Posture(s):** On Appeal.

West Headnotes (3)

[1]     **Search, Seizure, and Arrest** 🔑 License plate lights; obstruction of plate

Park police officer had reasonable suspicion to stop defendant's vehicle for failure to properly illuminate her rear tag, even though officer did not testify that he was within 50 feet of rear of vehicle at time it passed, where officer testified that he looked in his side-view mirror as defendant's vehicle passed his on parkway, and noticed that her vehicle's rear tag was not visible in dark and that, had rear tag been properly illuminated, he would have been able to see it. U.S.C.A. Const.Amend. 4; 36 C.F.R. § 4.2; West's V.C.A. § 46.2–1013.

More cases on this issue

[2]     **Automobiles** 🔑 Reliability of particular testing devices

There was sufficient evidence to prove that device was functioning accurately at time that breath alcohol test was administered, and thus results of test were admissible in defendant's prosecution for driving while intoxicated, where device had been approved by National Highway Traffic Safety Administration (NHTSA) as conforming to model specifications for evidential breath alcohol measurement devices, evidence was introduced at trial to show that device was accurately calibrated less than two months before test was administered, officer who administered test was familiar with device's self-test functionality based on his personal experience in administering hundreds of tests, and there was no indication of malfunction. 36 C.F.R. § 4.23(c)(4).

6 Cases that cite this headnote
More cases on this issue

[3]     **Criminal Law** 🔑 Public officers, and acts and signatures thereof

Was it appropriate to take judicial notice of fact?**Yes**
Conforming products list of evidential breath alcohol measurement devices published in Federal Register was subject to judicial notice. 44 U.S.C.A. § 1507.

6 Cases that cite this headnote
More cases on this issue

Case 3:25-mj-00320-MEO-DCK Document 72-2 Filed 08/12/26 Page 2 of 9

**\*232** Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:12–cr–00298–LO–1).

**Attorneys and Law Firms**

ARGUED: Thomas Kenneth Plofchan, Jr., Westlake Legal Group, Sterling, Virginia, **\*233** for Appellant. Stacy Bogert, Office of the United States Attorney, Alexandria, Virginia, for Appellee. ON BRIEF: Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

Before TRAXLER, Chief Judge, THACKER, Circuit Judge, and ELLEN L. HOLLANDER, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by unpublished opinion. Judge HOLLANDER wrote the opinion, in which Chief Judge TRAXLER and Judge THACKER joined.

Unpublished opinions are not binding precedent in this circuit.

**Opinion**

ELLEN LIPTON HOLLANDER, District Judge:

Following a bench trial conducted by a federal magistrate judge, Carly Ahlstrom was convicted of one count of driving while intoxicated, in violation of 36 C.F.R. § 4.23(a)(2). The district court affirmed the conviction. On appeal to this Court, Ahlstrom contends that the initial stop of her vehicle violated the Fourth Amendment. She also challenges the admissibility and evidentiary weight of the breath alcohol test used to prove her intoxication. Finding no error, we shall affirm. [1]

I.

As a result of events that occurred on January 6, 2012, Carly Ahlstrom was charged with driving without a tag light, in violation of 36 C.F.R. § 4.2, incorporating Va.Code Ann. § 46.2–1013 ("Citation 3326984"). *See* Joint Appendix ("J.A.") at 5, 22. The Virginia statute requires illumination of a vehicle's rear tag so that it is visible "from a distance of 50 feet to the rear." Ahlstrom was also charged with driving under the influence of alcohol, in violation of 36 C.F.R. § 4.23(a)(1) ("Citation 3326985"). J.A. at 6. In addition, she was charged with driving while intoxicated, in violation of 36 C.F.R. § 4.23(a)(2), prohibiting the operation of a motor vehicle with

a breath alcohol content of 0.08 grams of alcohol or more per 210 liters of breath ("Citation 3326986"). *See* J.A. at 7, 22–23.

At a hearing held before a federal magistrate judge on June 21, 2012, Ahlstrom moved to suppress evidence allegedly obtained in violation of her Fourth Amendment rights. *See* J.A. at 8, 21. In particular, she claimed that U.S. Park Police Officer Pentti Gillespie, who executed the vehicle stop, lacked reasonable suspicion to justify the stop. *Id.* at 21, 49–50. Finding that Officer Gillespie had probable cause to execute the stop based on Ahlstrom's failure to illuminate her rear license plate, as required by Virginia law, the magistrate judge denied the motion. *Id.* at 51. The trial followed immediately thereafter. The following evidence was adduced at the motion hearing and the trial.

At approximately 2:45 a.m. on January 6, 2012, Officer Gillespie observed a Lexus vehicle traveling southbound on the George Washington Memorial Parkway (the "Parkway"), near Reagan National Airport in Alexandria, Virginia. *Id.* at 25–26. At the time, Officer Gillespie was parked in a turn lane on the northbound side of the Parkway, but parallel to the Parkway, such that he could see traffic on both the northbound and southbound sides. *Id.* at 26–27, 35.

**\*234** When the Lexus approached Officer Gillespie's patrol car, the officer observed the driver hit the brakes suddenly, causing the vehicle to "dip down," although the vehicle was not going "excessively over the speed limit." *Id.* at 27. As the Lexus passed the police vehicle, Officer Gillespie looked in his side-view mirror and noticed that the rear license plate of the Lexus was not visible in the dark, which he understood to be a violation of Virginia law, requiring illumination of a rear tag to provide visibility "from a distance of 50 feet to the rear." *Id.* at 30–31, 45; *see* Va.Code Ann. § 46.2–1013.

Because the Parkway is within the boundaries of federally owned land administered by the National Park Service, *id.* at 29, drivers are subject to the federal traffic regulations set forth in Chapter I, Title 36 of the Code of Federal Regulations. *See* 36 C.F.R. §§ 1.2(a), 4.1. The federal traffic regulations incorporate state law, "[u]nless specifically addressed" by the federal regulations. *Id.* § 4.2(a). "Violating a provision of State law is prohibited." *Id.* § 4.2(b).

The officer followed the vehicle southbound for about a half mile, and observed it weaving several times within its lane. *Id.* at 31, 40–41. Officer Gillespie testified that, while he followed the vehicle, "there was a time" that he "could see

Case 3:25-mj-00320-MEO-DCK Document 72-2 Filed 08/12/26 Page 3 of 9

the back of [the] car ... and not see [its] tag light." *Id.* at 44. However, while Officer Gillespie was behind the Lexus, the headlights of the officer's vehicle illuminated the rear of the Lexus from a distance of more than 50 feet, and Officer Gillespie admitted that he could not discern at that time whether the license plate was properly illuminated. *Id.* at 38–39.

Nevertheless, based on his earlier observations, Officer Gillespie turned on his emergency lights to execute a traffic stop. *Id.* at 28. The driver of the Lexus did not pull over for another two-tenths of a mile. *Id.* at 29. Upon approaching the vehicle, Officer Gillespie determined that Ahlstrom was the driver. *Id.* at 53. A female passenger was in the front seat, and another was in the rear seat. *Id.* Officer Gillespie noticed that Ahlstrom and the front passenger were wearing coats that were on backwards, their legs were bare, and underwear and other clothing was strewn about the vehicle. *Id.* at 54. According to Gillespie, Ahlstrom explained that she and the front-seat passenger had been playing a game, and she had not stopped the vehicle sooner because she was not fully clothed. *Id.*

Officer Gillespie also observed that Ahlstrom's eyes were "red and glassy," and he "detected an odor of alcoholic beverage emanating from her." *Id.* Ahlstrom denied that she had been drinking, but stated that the front-seat passenger had been drinking. *Id.*

Based on his observations, Officer Gillespie administered three field sobriety tests to Ahlstrom: the "horizontal gaze nystagmus" test ("HGN"), the "walk and turn" test, and the "one-leg-stand" test. *Id.* at 56–57, 61. According to Officer Gillespie, Ahlstrom's performance on the HGN and walk-and-turn tests indicated "a high probability" that she was intoxicated. *Id.* at 62, 64. As a result of the field sobriety tests as well as his observations, Officer Gillespie placed Ahlstrom under arrest and transported her to the Park Police station. *Id.* at 65. Along the way, and before Ahlstrom was advised of her *Miranda* rights, she blurted that she knew she should not have been driving, but did so anyway. *Id.* at 65–66.

At the station, Officer Gillespie administered two tests of Ahlstrom's breath alcohol content ("BrAC"), using a device known as an Intoximeter EC/IR–II (the "Intoximeter"). *Id.* at 67–69. Officer Gillespie **\*235** testified that he is a trained and certified operator of the Intoximeter, and had administered hundreds of tests using the device on individuals suspected of driving under the influence. *Id.* at 68–69.

Pursuant to Park Police training, Officer Gillespie observed Ahlstrom for twenty minutes before administering the test, to ensure that she did not burp, belch, or hiccup, and provided Ahlstrom with water to rinse out her mouth. *Id.* at 69–70.[2] Additionally, Officer Gillespie testified that the Intoximeter was operating properly at the time. *Id.* at 70. In this regard, he explained that the Intoximeter undergoes a self-test before use, and is designed to disable itself if a malfunction is detected. *Id.* at 70–71.

The test results were memorialized in a printout generated by the Intoximeter, which was entered into evidence, over objection. *See id.* at 93, 154. The first test reported that Ahlstrom's BrAC was 0.114 grams of alcohol per 210 liters of breath. *Id.* at 154. The second test reported that Ahlstrom's BrAC was 0.116 grams of alcohol per 210 liters of breath. *Id.* Both readings are above the legal limit for motor vehicle operators set by 36 C.F.R. § 4.23(a)(2), which is 0.08 grams of alcohol per 210 liters of breath.

Although Officer Gillespie was not personally involved with the maintenance of the Intoximeter, J.A. at 91, the printout reflected that the device had been certified for accuracy on November 14, 2011, less than two months before it was used on Ahlstrom. *Id.* at 154. The printout also included the following attestation clause, which Officer Gillespie and Ahlstrom signed, *id.:*

> I CERTIFY THAT THE BREATH SAMPLE RESULT(S) ABOVE WERE ANALYZED BY AN INSTRUMENT THAT HAS BEEN APPROVED BY THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION (NHTSA) AS CONFORMING TO THE MODEL SPECIFICATIONS FOR EVIDENTIAL BREATH ALCOHOL MEASUREMENT DEVICES; THAT THE DRY GAS STANDARDS USED WITH THIS INSTRUMENT HAVE NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY TRACEABILITY; THAT THE TESTING PROCEDURES MEET NHTSA RECOMMENDATIONS AND MANUFACTURER'S

Case 3:25-mj-00320-MEO-DCK    Document 72-2    Filed 08/12/26    Page 4 of 9

SPECIFICATIONS; THAT THE SCIENTIFIC ASPECTS OF THE BREATH TESTING PROGRAM ARE OVERSEEN BY THE DISTRICT OF COLUMBIA'S CHIEF/DEPUTY CHIEF TOXICOLOGIST; THAT THE INSTRUMENT WAS CERTIFIED AS ACCURATE WITHIN THE PAST 90 DAYS BY A UNITED STATES PARK POLICE TECHNICIAN WHO IS CERTIFIED BY THE INSTRUMENT MANUFACTURER TO CALIBRATE AND CONDUCT ACCURACY CHECKS WITH THIS INSTRUMENT; THAT I AM CERTIFIED TO CONDUCT SUCH TESTING; AND THAT SET PROCEDURES WERE FOLLOWED WHILE OBTAINING THE ABOVE BREATH SAMPLE RESULT(S).

Ahlstrom contested the admissibility of the Intoximeter test results, asserting that Officer Gillespie had not observed Ahlstrom for the full twenty minutes before administering the breath tests. *Id.* at 93. She also challenged the Intoximeter's evidentiary **\*236** weight, on the ground that the Government had not provided evidence that the device was reliable or properly calibrated. *Id.* at 99–100. The magistrate judge rejected those contentions.

The court convicted Ahlstrom on Citation 3326986, for operating a motor vehicle with a BrAC of 0.08 grams of alcohol or more per 210 liters of breath, in violation of 36 C.F.R. § 4.23(a)(2). *See* J.A. at 116. Citation 3326985 was merged with the conviction and administratively closed. *Id.* The court found Ahlstrom not guilty on Citation 3326984, for driving without a tag light. *See id.*

Ahlstrom subsequently appealed to the United States District Court for the Eastern District of Virginia. *See id.* at 127. Noting that "the car went right by the officer," who "saw no light illuminating the license," the district court found "sufficient evidence" to justify the vehicle stop. *Id.* at 164. Further, the district court found that the Intoximeter test results were admissible and sufficient to support the conviction. *Id.* Accordingly, on September 14, 2012, the district court denied the appeal. *Id.* Ahlstrom then filed a timely notice of appeal to this Court. *Id.* at 167.

## II.

### A.

On appeal, Ahlstrom contends that the district court erred in finding sufficient evidence to support the vehicle stop. She also challenges the court's ruling as to the admissibility and evidentiary weight of the breath alcohol tests used to prove her intoxication.

Under Fed.R.Crim.P. 58(g)(2)(D), a district court reviewing a bench trial conducted by a magistrate judge "utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." *United States v. Bursey,* 416 F.3d 301, 305 (4th Cir.2005). In turn, "our review of a magistrate court's trial record is governed by the same standards as was the district court's appellate review." *Id.* at 305–06.

With respect to the denial of Ahlstrom's motion to suppress and Ahlstrom's challenges to the Intoximeter test results, "[f]indings of fact made by the trial court are reviewed for clear error, and issues of law (such as the interpretation of statutes and regulations) are reviewed de novo." *Id.* at 306; *see also United States v. Abramski,* 706 F.3d 307, 313–14 (4th Cir.2013). We consider the evidence in the light most favorable to the prevailing party. *United States v. Seidman,* 156 F.3d 542, 547 (4th Cir.1998). Thus, "[w]e assess challenges to the sufficiency of the evidence by viewing it—including all reasonable inferences to be drawn therefrom—in the light most favorable to the Government." *Bursey,* 416 F.3d at 306; *see also United States v. Vankesteren,* 553 F.3d 286, 288 (4th Cir.2009).

### B.

#### 1.

**[1]** Ahlstrom complains that Officer Gillespie's stop of her vehicle violated her rights under the Fourth Amendment, and therefore evidence obtained as a result of the stop should have been suppressed as fruit of the poisonous tree. We disagree.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.   4

A routine vehicle stop by a police officer constitutes a seizure under the Fourth Amendment. *United States v. Digiovanni,* 650 F.3d 498, 506 (4th Cir.2011) (citing *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). As such, a vehicle stop is subject to the Fourth Amendment imperative " 'that it not be unreasonable under the circumstances.' " *United States v. Wilson,* 205 F.3d 720, 722 (4th Cir.2000) (quoting **\*237** *Whren,* 517 U.S. at 809–10, 116 S.Ct. 1769). This requirement is satisfied by the police officer's reasonable articulable suspicion of a traffic violation. *United States v. Kellam,* 568 F.3d 125, 136 (4th Cir.2009); *see also United States v. Branch,* 537 F.3d 328, 335 (4th Cir.2008) ("Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle....").

Notably, the " 'reasonable suspicion' standard is 'less demanding ... than probable cause.' " *Branch,* 537 F.3d at 336 (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)); *see United States v. Lawing,* 703 F.3d 229, 236 (4th Cir.2012), *cert. denied,* ––– U.S. ––––, 133 S.Ct. 1851, 185 L.Ed.2d 854 (2013). In fact, "the quantum of proof necessary to demonstrate 'reasonable suspicion' is 'considerably less than [a] preponderance of the evidence.' " *Branch,* 537 F.3d at 336 (quoting *Wardlow,* 528 U.S. at 123, 120 S.Ct. 673) (alteration in *Branch* ). We have explained:

> In order to demonstrate reasonable suspicion, a police officer must offer "specific and articulable facts" that demonstrate at least "a minimal level of objective justification" for the belief that criminal activity is afoot. Judicial review of the evidence offered to demonstrate reasonable suspicion must be commonsensical, focused on the evidence as a whole, and cognizant of both context and the particular experience of officers charged with the ongoing tasks of law enforcement.

*Branch,* 537 F.3d at 337 (internal citation omitted); *see also United States v. Powell,* 666 F.3d 180, 186 (4th Cir.2011). Because this standard is objective, not subjective, "[a]ny ulterior motive a police officer may have for making the traffic stop is irrelevant." *Digiovanni,* 650 F.3d at 506 (citing *Whren,* 517 U.S. at 813, 116 S.Ct. 1769).

Officer Gillespie executed a stop of Ahlstrom's vehicle because her rear tag was not properly illuminated, as required by Va.Code Ann. § 46.2–1013. It provides that the rear tag of a vehicle must be illuminated so that it is visible "from a distance of 50 feet to the rear." Officer Gillespie testified that he looked in his side-view mirror as Ahlstrom's vehicle passed

his on the Parkway, and noticed that her vehicle's rear tag was not visible in the dark. J.A. at 45. Further, he testified that, had Ahlstrom's rear tag been properly illuminated, he would have been able to see it. *Id.*

To be sure, as Ahlstrom observes, App. Br. at 21–23, Officer Gillespie did not specifically testify that he was within 50 feet of the rear of Ahlstrom's vehicle at the time it passed. But, from the officer's uncontroverted testimony as to the proximity of the respective vehicles at the relevant time, the finder of fact could infer that Gillespie was within 50 feet of Ahlstrom's vehicle when he noticed that her rear tag was not illuminated. *See United States v. Mubdi,* 691 F.3d 334, 342 (4th Cir.2012) (upholding legality of traffic stop based on testimony of police officers as to proximity of defendant's vehicle to their patrol car, allegedly in violation of North Carolina law prohibiting motorists from following "too closely" behind another vehicle). Even if Officer Gillespie incorrectly believed that he was within 50 feet at the time, that mistake would have been reasonable, based on the evidence. *See id.* (" '[I]f an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable.' ") (quoting *United States v. Chanthasouxat,* 342 F.3d 1271, 1276 (11th Cir.2003)).

As noted, the standard for a vehicle stop does not demand certainty, only " 'a minimal level of objective justification.' " *Branch,* 537 F.3d at 337 (citation omitted). **\*238** Viewing the evidence in the light most favorable to the Government, *Seidman,* 156 F.3d at 547, Officer Gillespie had reasonable, articulable suspicion to execute a traffic stop based on Ahlstrom's violation of a Virginia traffic law. *See* 36 C.F.R. § 4.2 (incorporating state law); Va.Code Ann. § 46.2–1013. Accordingly, we conclude that Ahlstrom's motion to suppress was properly denied.

2.

Federal regulations prohibit the operation of a motor vehicle within "[t]he boundaries of federally owned lands and waters administered by the National Park Service," 36 C.F.R. § 1.2(a)(1), while "[t]he alcohol concentration in the operator's ... breath is ... 0.08 grams or more of alcohol per 210 liters of breath." *Id.* § 4.23(a)(2). Upon probable cause to believe that a motor vehicle operator is unlawfully intoxicated, the operator is required to submit to a breath alcohol test. *Id.* § 4.23(c)(1). The applicable regulation, 36 C.F.R. § 4.23(c)(4), provides: "Any test shall be conducted by using accepted scientific

Case 3:25-mj-00320-MEO-DCK   Document 72-2   Filed 08/12/26   Page 6 of 9

methods and equipment of proven accuracy and reliability operated by personnel certified in its use." At trial, the Government relied on the Intoximeter's test results to prove that Ahlstrom's BrAC exceeded the legal limit prescribed by 36 C.F.R. § 4.23(a)(2).

We have long recognized that a "breathalyzer test" is the "best means of obtaining evidence of ... breath alcohol content." *United States v. Reid,* 929 F.2d 990, 994 (4th Cir.1991). Breathalyzers employ "methodology [that] is well-known and unchallenged." *United States v. Brannon,* 146 F.3d 1194, 1196 (9th Cir.1998). Ahlstrom asserts, however, that the Intoximeter was not shown to be "equipment of proven accuracy and reliability," as required under 36 C.F.R. § 4.23(c)(4). In particular, she claims that there was insufficient evidence to prove that the device was functioning accurately at the time the breath alcohol test was administered. Therefore, Ahlstrom argues that the test results were improperly admitted into evidence at trial. Even with the test results, Ahlstrom contends, alternatively, that the evidence was insufficient to support her conviction. Neither argument is persuasive. [3]

The regulation at issue, 36 C.F.R. § 4.23(c)(4), does not purport to impose a heightened standard for the admissibility of machine-generated evidence. In promulgating 36 C.F.R. § 4.23(c), the Department of Interior indicated:

> Paragraph (c)(4) limits the conducting of quantitative tests to accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use. *The NPS intent is to assure that equipment and methods used for such tests are of a type or nature commonly used by Federal, State and local law enforcement agencies and accepted as reliable for such purposes by Federal, State or local courts.*

Vehicles & Traffic Safety, Dep't of the Interior, Nat'l Park Serv., 52 Fed.Reg. 10670–01, 10681 (Apr. 2, 1987) (emphasis **\*239** added). The regulation should be applied consistent with our general standards for evaluating the reliability of machine-generated evidence.

In *United States v. Washington,* 498 F.3d 225 (4th Cir.2007), we explained: "Any concerns about the reliability of ... machine-generated information [are] addressed through the process of authentication ...." *Id.* at 231. Authentication of such information is generally satisfied by "evidence 'describing [the] process or system used to produce [the] result' and showing it 'produces an accurate result.' " *Id.* (quoting Fed.R.Evid. 901(b)(9)) (alterations in *Washington* ). We illustrated the application of this standard to the results of a blood alcohol test, as follows:

> When information provided by machines is mainly a product of "mechanical measurement or manipulation of data by well-accepted scientific or mathematical techniques," reliability concerns are addressed by requiring the proponent to show that the machine and its functions are reliable, that it was correctly adjusted or calibrated, and that the data (in this case, the blood) put into the machine was accurate (i.e., that the blood put into the machine was the defendant's).

*Id.* at 231 (quoting 4 Mueller & Kirkpatrick, Federal Evidence § 380, at 65 (2d ed.1994)). [4]

**[2]**  Applying the standard set forth above, we are satisfied that the evidence presented at trial adequately supported the admissibility of the Intoximeter test results.

**[3]**  First, the Intoximeter and its functions were shown to be generally reliable and accurate. According to the Intoximeter's attestation clause, the device "ha[d] been approved by the National Highway Traffic Safety Administration (NHTSA) as conforming to the model specifications for evidential breath alcohol measurement devices." J.A. at 154. [5] NHTSA certification is widely accepted by courts as evidence of a device's reliability. *See California v. Trombetta,* 467 U.S. 479, 489 & n. 9, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (recognizing accuracy of breath alcohol testing device based on NHTSA and state certification); *Brannon,* 146 F.3d at 1196 (same). And this is for good reason. The NHTSA, a unit of the Department of Transportation, has been evaluating breath alcohol testing devices for evidential use for thirty years. *See* Conforming Products List of Evidential Breath Alcohol Measurement Devices, 77 Fed.Reg. 35747–01, 35747 (June 14, 2012); Standard for Devices to **\*240** Measure Breath Alcohol, 38 Fed.Reg. 30459–02 (Nov. 5, 1973). It "provid[es] a centralized qualification test program for breath-testing devices designed to collect evidence in law enforcement

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

6

programs." Model Specifications for Devices to Measure Breath Alcohol, 58 Fed.Reg. 48705–01, 48706 (Sept. 17, 1993). Notably, to achieve NHTSA approval, a device must undergo a rigorous battery of tests, conducted "semi-annually or as necessary." *See id.*

Second, evidence was introduced to show that the Intoximeter was accurately calibrated at the time the test was administered. Specifically, the Intoximeter's attestation clause indicated that the device had been "certified as accurate within the past 90 days by a United States Park Police technician who is certified by the instrument manufacturer to calibrate and conduct accuracy checks." J.A. at 154. Indeed, it had been calibrated on November 14, 2011, less than two months before it was used for Ahlstrom. *See id.* Additionally, Officer Gillespie testified that the Intoximeter is designed to conduct a self-diagnostic test before use, and will take itself out of operation if a malfunction is detected. He is well trained in its use, and stated that the self-diagnostic test did not reveal any problems.

Ahlstrom's metaphysical doubts are not persuasive, and her reliance on *United States v. Foster,* 829 F.Supp.2d 354 (W.D.Va.2011), which involved a charge for driving under the influence, in violation of 36 C.F.R. § 4.23(a)(1), is misplaced. In *Foster,* the district court excluded, as inadmissible hearsay, a certificate of accuracy prepared by a police technician who did not testify. *See id.* at 363–65. Instead, testimony was elicited from the officer who had administered the breath alcohol test. He only knew "from training, not from personal experience, that if the machine had not been certified as accurate, it would produce an error reading" and not operate. *Id.* at 369. Unlike in this case, it was the officer's "first time using the machine for a case-related test." *Id.* Moreover, "there [wa]s no certification on the face" of the test results "regarding the accuracy of the testing equipment." *Id.* at 368.

Notably, and contrary to Ahlstrom's position, the district court found the test results admissible. *Id.* at 367. However, it declined to give them weight because, in its view, "[t]his evidence [was] ... not enough to establish that the machine was in good working order on the night in question." *Id.* at 369.

Here, the attestation clause produced as part of the Intoximeter's test results provided evidence of accuracy, on the face of the printout. As noted, it had been calibrated for accuracy within the past two months, and was approved for evidential use by the NHTSA. Moreover, Officer Gillespie was familiar with the self-test functionality based on his personal experience in administering hundreds of tests, even if he lacked knowledge of the self-test's design.

Accordingly, we find no error in the court's admission of the test results or in its determination to ascribe weight to the test results. *See, e.g., Daras, supra* n. 3, 1998 WL 726748, at *1–2; *United States v. Hamblen–Baird,* 266 F.R.D. 38, 40–41 (D.Mass.2010) (admitting BrAC test results under 36 C.F.R. § 4.23(c)(4) because device was NHTSA approved, test printout showed annual certification, it was used properly, and there was "no indication" of a malfunction).

To the extent that Ahlstrom contends that the evidence was not sufficient to support her conviction, *see* App. Br. at 14, we disagree. Ahlstrom has not overcome the "heavy burden" for a sufficiency of the evidence challenge. *United States v. Hoyte,* 51 F.3d 1239, 1245 (4th Cir.1995). **\*241** "[V]iewing the evidence in the light most favorable to the prosecution," *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Intoximeter's test results show that Ahlstrom's BrAC was well over the legal limit of 0.08 grams of alcohol per 210 liters of breath, in violation of 36 C.F.R. § 4.23(a)(2).

In passing, Ahlstrom also asserts that the district court erred in relying on the magistrate judge's report, filed pursuant to Fed.R.Civ.P. 58(g), which stated: "Officer Gillespie testified that the breath machine was properly maintained, in good working order, and designed to disable itself if its internal diagnostic tests showed any malfunction." App. Br. at 19–20. Even accepting, *arguendo,* appellant's contention that the report was inaccurate, we have independently concluded that the Intoximeter test results were admissible and sufficient to support the conviction.

### III.

For the foregoing reasons, we affirm.

*AFFIRMED.*

**All Citations**

530 Fed.Appx. 232

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

## Footnotes

1   The magistrate judge had jurisdiction pursuant to 18 U.S.C. § 3401, and the district court had jurisdiction under 18 U.S.C. § 3402. This Court exercises jurisdiction pursuant to 28 U.S.C. § 1291.

2   The precautions, including the observation period, are meant to ensure that any mouth alcohol, which can skew test results, dissipates before breath samples are taken. *See United States v. Brannon,* 146 F.3d 1194, 1196 (9th Cir.1998) (citing 2 Richard E. Erwin, *Defense of Drunk Driving Cases* §§ 18.03, 21.06 (3d ed.1995)).

3   We have not previously discussed the "accuracy and reliability" requirement of 36 C.F.R. § 4.23(c)(4) in a published opinion. In their briefs, both sides discussed *United States v. Daras,* 164 F.3d 626, 1998 WL 726748, at *1–2 (4th Cir. Oct. 16, 1998) (per curiam). There, we found a breath test device accurate and reliable under 36 C.F.R. § 4.23(c)(4) because it had been certified as accurate three months prior to use; it was approved for evidential use by the National Highway Traffic Safety Administration; it had been tested and found to be working properly "immediately before" use; and the test was administered properly. *See Daras,* 1998 WL 726748, at *1–2.

4   *Washington* held that "mechanical computer printouts" reporting the results of a blood alcohol test are not testimonial hearsay for purposes of the Confrontation Clause because "the raw data generated by the machines do not constitute 'statements,' and the machines are not 'declarants.' " 498 F.3d at 231. Ahlstrom has not asserted a Confrontation Clause challenge to the admission of the test results, although she cites, in passing, *Bullcoming v. New Mexico,* ––– U.S. ––––, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011) (holding that forensic laboratory report certifying that defendant's blood alcohol concentration was above legal limits constituted testimonial hearsay under Confrontation Clause because it was not introduced through testimony of the analyst who had performed the certification).

5   Ahlstrom mistakenly asserts that NHTSA approval was not introduced into evidence. In any event, the list of approved devices is published in the Federal Register, *see, e.g.,* Conforming Products List of Evidential Breath Alcohol Measurement Devices, 77 Fed.Reg. 35747–01 (June 14, 2012), and subject to judicial notice by this Court. 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed...."); *see Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1239–40 (4th Cir.1989) ("[A]n appellate court may take judicial notice of facts.").

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.