**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No: 3:25-mj-00320-MEO-DCK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM STANLEY and HEATHER MORROW,<br><br>Defendants. | **DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DISMISSAL OF COUNTS 1, 2, AND 3: FEDERAL PROPERTY** |

**Summary Of Argument**

The single common element of Counts 1, 2, and 3 is that the Defendants must have entered onto and committed offenses on "Federal property." Because the United States does not own 6130 Tyvola Centre, but instead is a lessee, the extent of its interest is defined by the lease agreement. Under Federal law, to constitute "Federal property," the United States must either legally own, or legally lease, or legally occupy property. In this case, this is defined by the terms of the lease. Those terms are unambiguous and cannot be altered with extrinsic evidence.

The terms of this lease specifically provide the premises to be leased consist of only 52,000 square feet and related surface and secure parking (out of a total property size of nearly 8 acres). The lease gives the Government the "right to use" appurtenant areas (roadway, sidewalks, etc.); but the "right to use" these areas is not exclusive to the Government and does not permit the Government to occupy those areas or exclude others. There is no language that cedes the ownership or occupancy of these areas to the Government. The Government's right to use these other areas is nothing more than a "right of access" to permit the Government (as well as other

users) to get to and from this landlocked building. In addition, the lease itself distinguishes between the premises that have been leased and "outside areas." It imposes on the Lessor the obligation to maintain both the "leased premises" and all "outside areas." If the Government leased the entire property, the inclusion of "outside areas" would not be necessary.

The Government's course of conduct at the property supports this plain reading. Under the lease, the Government reserved the right to post regulations at the entrance to its property. Indeed, the statutory authority granting DHS the right to enforce the regulations charged in Counts 1, 2, and 3 requires that they be posted in a conspicuous place, while the regulations themselves require their posting at the public entrance. The regulations were not posted at the public entrance to 6130 Tyvola Center (where the charged conduct took place). Instead, they were posted on the outside of the building - - because that is the space that the Government actually leases. The Government did not post "No Trespassing" signs at the entrance to 6130 Tyvola Centre; these signs were posted well inside the property, at the parking lots and near the building. Neither the posted regulations nor the "No Trespassing" signs could even be read from the entrance to 6130 Tyvola Center.[1] Because these signs are required to be posted at entrances to property owned, leased, or occupied by the Government, their placement reflects that under the lease "Federal property" consists of the building and parking lots. In fact, the Defendants have not even been charged with trespassing or unlawful entry onto Federal property because they never went past the "No Trespassing" signs or were in the building or parking lots.

The Government is expected to offer statements by third parties that "interpret" and "explain" the lease. This is extrinsic evidence and is not admissible to determine what the lease means. Parol evidence cannot be considered on the meaning of a lease, or any contract, unless its

---

[1] Photographs of these regulations are attached as **Attachment 1**.

terms of the lease are ambiguous on their face. These terms are not. As such, the Government may not alter or explain these terms to its liking through extrinsic evidence.

Finally, the issue of "Federal property" is a two-step inquiry, because it embraces both this Court's jurisdiction and an element of the offense. The Court has properly framed the threshold inquiry - - it is a question of law as to whether there is sufficient jurisdictional evidence to conclude that the charged conduct could have occurred on "Federal property." And for that, the Court looks to the lease and its terms. If the Court determines as a matter of law that Federal property could be involved, then the question of whether the charged conduct took place on Federal property is an issue of fact for the Jury.

**The Property Owned, Leased, or Occupied by the Federal Government is Limited by the Terms of the Lease to the Building and Parking Lots**

As noted in the Defendants' Motion to Dismiss, there is no definition under these regulations for "Federal property." Rather, courts have simply inquired as to whether land is "owned, leased, or occupied." *See, e.g., United States v. Reardon,* 2026 WL 123302, *6 (U.S. Dist. Ct. W.D. La. 2026). "Federal policy favors purchase, rather than leasing, of property." *United States v. Bedford Associates,* 657 F.2d 1300, 1309 (2d Cir. 1981). When the Government does enter into a lease, the terms of that lease will control the Government's property interest. This is so because "although a lease may concern and convey a property interest, it is very much a contract." *Corman v. United States,* 26 Fed. Cl. 1011, 1015 (1992). Thus, a lease is "subject to general principles of contract interpretation as equally applicable to the federal government as they are to a private party." *Westdale Northwest Center, LP v. United States,* 154 Fed. Cl. 557, 576 (2021). Federal law governs the interpretation of leases with the United States. *Ginsburg v. Austin,* 968 F.2d 1198, 1200 (Fed. Cir. 1992). This means that, in interpreting a lease, its terms must be

given their "plain meaning." *Id.* Thus, "when interpreting the language of a contract, or as in this case, a lease, a court must give reasonable meaning to all parts of the agreement and not render any portion meaningless, or interpret any provision so as to create a conflict with another provision of the agreement." *Corman,* 26 Fed. Cl. at 1015.

***The Description of "Leased Premises" is Limited to 52,000 Square Feet of Office Space and 229 Parking Spaces and Does Not Include "outside areas."***

The lease in this matter was entered into between the United States and the original owner, JDL-Charlotte 2, LLC, on June 24, 2002. The first page describes the property to be leased: "The Lessor hereby leases to the Government the following described premises: A total of 52,000 rentable square feet . . . of office and related space, with 29 reserved secured inside parking spaces in a newly constructed building." Gov't Ex. 47 p. 1. Rent was based on the square footage that was leased. In addition, the Lessor was required to furnish to the Government an additional 200 on-site paved surface parking spaces at no additional charge as "rental consideration." Gov't Ex. 47 p. 2. Other than these parking spaces and the 52,000 square feet of building, the lease does not provide that any other portion of the property is either part of the "described premises" or "rental consideration." The entire site is 7.99 acres and encompasses more property than the 52,000 square foot building and 229 parking spaces. Indeed, the solicitation made by the GSA for this lease specified that it was only "interested in leasing approximately 52,000 square feet of rentable space." Gov't Ex. 47 p. 9.[2]

The lease also provided in paragraph 3.10, that in addition to the leased premises, the Government would have "the right to use appurtenant areas and facilities" and that it "reserves the

[2] Since the original lease, the Government has given up occupancy for roughly 12,000 square feet and the property owner is in the process of leasing this space to another tenant. Thus, as of 2025, the Government did not even lease the entire building, let alone the entire property. **Attachment 2.**

right to post Government rules and regulations where the Government leases space." Gov't Ex. 47 p. 19. Such spaces would include any road constructed by the Lessor that permitted ingress and egress to the leased premises. Significantly, this is nothing more than a "right to use" - - it is not part of the "leased premises." A "right to use" is not a right to occupy - - if so, then any person could "occupy" a public street or highway because he or she has a right to use it. Simply having a "right to use" a space or a roadway does not render it "Federal property" when it is not leased, owned or occupied. Indeed, the "right to use" granted in the lease is not even an exclusive right to use, and it does not grant the United States either the power to control the roadway or to exclude others from using the roadway. It simply permits the United States to use it, and nothing more.

The lease itself recognized the distinction between the leased premises and the remainder of the property. In paragraph 7.9(b), the parties provided that the "Lessor shall maintain the leased premises, including outside areas in a clean condition . . . ." If, as the Government suggests, the outside areas are part of the "leased premises," then there would have been no reason to include "outside area" in the Lessor's obligation to maintain the "leased premises."

Finally, in the 168 pages of this lease, there is NO language or clause that includes or defines the entirety of the property as "leased premises."[3]

Under the plain reading of the lease and its terms, the property on which the charged conduct occurred was, at best, property adjacent to property that was leased by the Government.

[3] It is anticipated that the Government will argue that because it pays the property taxes on the parcel, this somehow means that the entirety of the parcel is included in the lease, regardless of how the lease defines the leased premises. But the payment of taxes as part of a commercial lease is a standard term of this type of lease, which is a "modified net lease" in which the tenant will pay a base rent and negotiated expenses (such as taxes or insurance). The payment of taxes by a tenant is a standard feature of both "double net" and "triple net" leases, which are common commercial and business leases. In other words, this payment is neither out of the ordinary nor somehow overrides the plain language of the lease.

Under 91 FR 2316-01, Rules and Regulations General Services Administration, 41 CFR Part 102-74, the United States has acknowledged that the violations charged apply "only when the conduct is committed on the property itself and not adjacent thereto." Here, the "property itself" is the property described as the premises that were leased to the United States and only that property. [4]

***The Government's Actions Before this Incident Support this Plain Meaning***

Prior to November 2025, the Government acted in a way consistent with the plain meaning of the lease, and never took actions that indicated it leased land or space beyond that described in the "leased premises" paragraph. For example, under paragraph 3.10 the Government had the right to post regulations "where the Government leases space." It is undisputed here that the regulations were posted on the office building, not at the public entrance to 6130 Tyvola Centre Drive. If, as the Government now claims, it leased the entire property, then these regulations should have been posted at the public entrance. Indeed, because 40 U.S.C. § 1315(c) requires that such regulations "be posted and remain posted in a conspicuous place on the property," and because the regulations themselves require that they be posted "at each public entrance to each Federal facility," the failure to post these regulations at the public entrance to 6130 Tyvola Centre meant they were neither at the entrance to what the Government claims was its facility nor were they conspicuous to anyone entering the property. But, if in fact the Government leased only those premises described in the lease - - 52,000 square feet and 229 parking spaces - - then their placement was proper.

[4] At the Pretrial Hearing, the Government cited 6 C.F.R. part 139, which addresses property "**owned or occupied** by the Federal Government." But this regulation was not charged in the Bill of Information. Instead, the Defendants were charged under a GSA regulation which addresses "property under the jurisdiction, custody, or control of GSA (not all property protected by the Federal Protective Service) and applies only when the conduct is committed on the property itself and not adjacent thereto."

Similarly, the location of the "No Trespassing" signs on the property is consistent with the definition of "leased premises" in the lease, and inconsistent with the claim that the entirety of the property was leased to the Government. There were three "No Trespassing" signs placed by the Government. None were at the public entrance to 6130 Tyvola Centre. Two were in the parking lots, roughly 50 to 100 yards from the public entrance, and a third was on the lawn in front of the ICE building, roughly 50 yards from the public entrance. None could be read (and the parking lot signs could not be seen) from the public entrance. This placement is consistent with the definition of "leased premises" as including only the building and parking spaces. To believe otherwise would require the Court to assume that the Government required the public to trespass before they could see and read the signs that said "No Trespassing." Importantly, while the Government erected a sign displaying the Department of Homeland Security brand at the public entrance, it did not include any language declaring the property to be a federal facility, or instructing the public that there was no trespassing, or otherwise advising the public that the property was under the jurisdiction of the United States.



***The Government Cannot Present or Rely on Extrinsic Evidence to Alter the Plain Meaning of "Leased Premises"***

A lease, even one with the United States, is nothing more than a contract. And "if the parties have adopted a written text as an expression of their final understanding of the agreement between them, a court may not consider extrinsic evidence to add or otherwise modify the terms of the written agreement." *Westdale Northwest Center, LP,* 154 Fed. Cl. at 577. Thus, "if a court finds a contract to be unambiguous, the plain meaning and parol evidence rules bar consideration of evidence outside the four corners of the contract and require the Court to enforce the contract as written." *Id.* Here, the definition of "leased premises" is plain, clear, and unambiguous. The limitation of the Government's property interest to what is defined as "leased premises" is also consistent with the other clauses of the lease and is also consistent with the Government's actions at the property before November 2025.

The Government, nonetheless, is expected to offer unsworn reports of interviews conducted by federal agents of two individuals. Neither negotiated the lease nor its terms. One, from the GSA, took over administering the lease in October 2025, the other, an asset manager for the limited liability company that now owns the property (and was not the owner who negotiated the lease), took responsibility 18 months ago. Both seem to attempt to change the definition of "leased premises" to include the entirety of the property, not simply the premises described in the lease. They do not point to any clause or other language in the lease to support this interpretation, they simply say it. Putting aside whether either is qualified to give an opinion on what the term "leased premises" means, because the definition in the lease is not ambiguous, their opinions are barred by the parole evidence rule.[5]

[5] The Defendants note that before entering "finance," the asset manager was a massage therapist. The GSA employee has been a Lease Contracting Officer for approximately one month before this

The Government bears the burden of showing that the definition of "leased premises" is ambiguous on its face or is rendered ambiguous by other clauses of the agreement. It has not done so and cannot do so. The lease is plain and its language clear as to the premises that the Lessor is leasing to the Government. Under these circumstances, the extrinsic evidence offered cannot be considered or allowed to alter this plain language.

**The Determination of "Federal property" is a Two-Step Inquiry Because It Involves a Threshold Issue of Jurisdiction and a Factual Issue Concerning an Element of the Charged Offenses**

The Defendants moved to dismiss Counts 1, 2, and 3 on July 31 (ECF#58) on the ground that the Government could not show that the charged conduct took place on "Federal property" and thus there was no jurisdiction for these federal violations. In response, the Government argued that whether the conduct took place on "Federal property" was an issue of fact for the Jury in part because it was an element of the charged offenses. ECF#70. The Court, at the Pretrial Hearing, dismissed the Defendants' Motion ruling that "[w]hether the defendants entered federal property is a factual question to be determined by the jury." August 17 Tr. at 67 lines 13-16. Subsequently, in denying the Defendant's Motion for Judicial Notice, the Court clarified its ruling, writing that it "will determine as a matter of law what constitutes federal property in this case." Order p. 2 (ECF#90). The Court further indicated that the jury would only determine whether the Defendants "willfully" entered in and on "Federal property" and engaged in the charged conduct.

The Defendants submit that "Federal property" is a two-part inquiry. The first part is jurisdictional: is there sufficient evidence that the charged conduct took place on "Federal property" sufficient to permit the prosecution to go forward? If the Court rules that the evidence

incident, and was accompanied by a GSA counsel who apparently provided interpretations that he then adopted.

is insufficient, then there is no jurisdiction over this conduct and Counts 1, 2, and 3 should be dismissed. If there is sufficient evidence to establish jurisdiction, then whether the property is "Federal property" becomes an issue of fact because it is an element of each of the charged offenses. Since *United States v. Gaudin,* 515 U.S. 506, 510 (1995), it has been clear that the Fifth Amendment's Due Process Clause and the Sixth Amendment "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." Or, as put by Justice Scalia, the "Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." *Id.* Here, and assuming that the Government can present sufficient proof to overcome the jurisdictional inquiry, the question of whether the conduct occurred on "Federal property" is an element of each of the offenses in Counts 1, 2, and 3. This approach is consistent with the rules in *United States v. Perez,* 150 F.4th 237, 239-40 (4th Cir. 2025) ("A location's jurisdictional status . . . is a legal issue") and *United States v. Bello,* 194 F.3d 18, 23 (1st Cir. 1999) ("Where the prison sits is an element of the offense and unquestionably an adjudicative fact).

**Conclusion**

For the reasons set forth above, this Court should dismiss Counts 1, 2, and 3 for lack of jurisdiction. To the extent necessary, the Defendants adopt by reference and incorporate their Motion to Dismiss Counts 1, 2, and 3 and attached exhibits.

This 29th day of August 2026.

*/s/ James P. Cooney III*

James P. Cooney III (NC Bar No. 12140)
Claire J. Rauscher (NC Bar No. 21500)
WOMBLE BOND DICKINSON (US) LLP
301 South College Street, Suite 3500
Charlotte, North Carolina 28202
Telephone: (704) 331-4980

Telephone: (704) 331-4961
Email: Jim.Cooney@wbd-us.com
Email: Claire.Rauscher@wbd-us.com
*Attorneys for Defendant William Stanley*

*/s/ Rob Heroy*
Rob Heroy (NC Bar No. 35339)
Goodman Carr, PLLC
301 S.McDowell St., Ste. 602
Charlotte, NC 28204
Telephone: (704) 372-2770
Email: Rheroy@goodmancarr.net

*/s/ Xavier T. de Janon*
Xavier T. de Janon (NC Bar No. 58803)
P.O. Box 470221
Charlotte, NC 28247
Telephone: (704) 448-9170
Email: xavier@peopleslaw.co
*Attorneys for Defendant Morrow*