| GENERAL SERVICES ADMINISTRATION<br>PUBLIC BUILDINGS SERVICE<br><br>**LEASE AMENDMENT** | LEASE AMENDMENT No. 24<br>TO LEASE NO. GS-04P-LNC42087 |
|---|---|
| ADDRESS OF PREMISES<br>6130 TYVOLA CENTRE BLDG.<br>6130 Tyvola Centre Dr<br>CHARLOTTE, NC 28217-6432 | PDN Number: N/A |

**THIS AMENDMENT** is made and entered into between

DHS NC LLC

whose address is: 6130 TYVOLA CENTRE DR
CHARLOTTE, NC 28217-6432

hereinafter called the Lessor, and the **UNITED STATES OF AMERICA**, hereinafter called the Government:

**WHEREAS**, the parties hereto desire to amend the above Lease to extend the leased term and reduce office square footage from 48,300 ABOA SF to 36,194 ABOA.

NOW THEREFORE, these parties for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, covenant and agree that the said Lease is amended, effective July 29, 2023 as follows:

**A.** Paragraph "1", "Lease Term" of the Lease is hereby deleted in its entirety and the following is inserted in lieu thereof:

A total of 41,316 rentable square feet (36,194 ABOASF) of office and related space, with 29 reserved secured inside parking space, as shown in stie plan.

This Lease Amendment contains 6 pages.

All other terms and conditions of the lease shall remain in force and effect.
IN WITNESS WHEREOF, the parties subscribed their names as of the below date.

**FOR THE LESSOR:**

[signature]

Name: Marc Civitillo
Title: Authorized Signatory
Entity: DHC NC, LLC
Date: 8/16/2023

DocuSigned by:
LeShaundra Greer
D98F7736F15B488...

Name: LeShaundra Greer
Title: Lease Contracting Officer
General Services Administration, Public Buildings Service
Date: 8/31/2023

**WITNESSED FOR THE LESSOR BY:**

[signature]

Name: James Pancetti
Title: VP - Development
Date: 8/16/23

**Lease Amendment Form**
**REV (10/20)**

**B.** Paragraph “2”, “Lease Term” of the Lease is hereby deleted in its entirety and the following is inserted in lieu thereof:

“To Have and To Hold the said Premises with its appurtenances for the term beginning upon July 29, 2003 through July 28, 2028, subject to termination and renewal rights as may be hereinafter set forth.”

**C.** Paragraph “3” “Rent and Other Consideration” is hereby amended in its entirety and the following is inserted in lieu thereof:

“A. The Government shall pay the Lessor annual rent, payable in monthly installments in arrears, at the following rates:

| | **EFFECTIVE July 29, 2023-July 28, 2026 (Firm)** | **EFFECTIVE July 29, 2026-July 28, 2028 (Soft)** |
|---|---|---|
| | **ANNUAL RENT** | ANNUAL RENT |
| SHELL RENT | $ 1,011,482.00 | $ 1,011,482.00 |
| OPERATING COSTS* | $ 413,920.00 | $ 413,920.00 |
| PARKING | $ 0.00 | $ 0.00 |
| **ANNUAL RENT** | **$** 1,425,402.00 | $ 1,425,402.00 |

*OPERATING COST BASE FOR PURPOSES OF ADJUSTMENT IS ESTABLISHED AT $**10.02**/RSF. THE OPERATING COST BASE WILL CONTINUE TO BE ADJUSTED IN ACCORDANCE WITH PARAGRAPH 2.09 OPERATING COSTS ADJUSTMENT
*OPERATING INCLUSIVE OF THE CHARGE FOR 24/7 server/LN room utilities of $8,453.40 annually per unilateral LA U01.

**D.** Paragraph “4” “Termination Clause” is hereby deleted in its entirety and the following is inserted in lieu thereof: The Government may terminate the lease, in whole or in part, at any time on or after July 28th, 2026, by giving the lessor at least 90 days notice in writing. No rent shall accrue after the effective date of the termination. Said notice shall be computed commencing with the day after the day of mailing.

**E.** Paragraph “14” “Paragraph 3.3 (Tax Adjustment)” is hereby deleted in its entirety and the following is inserted in lieu thereof:

In accordance with SFO 1NC0116, Paragraph 3.3 (Tax Adjustment), the percentage of Government occupancy is established as 79.45% (Based on Government occupancy of 41,316 RSF).

**F.** The following FAR clause 52.204-25 (NOV 2021) is hereby attached to the lease.

**G.** The following GSAR Representation 552.270-33 “Foreign Ownership and Financing Representation for High Security Leased Space is hereby attached to the lease.

**H.** The following GSAR Clause 552.270-34 “Access Limitation for High Security Lease Space” is attached to the lease.

DS
LG

**LESSOR:** _______ **GOVERNMENT:** _______

## 52.204-25 Prohibition on Contracting for Certain Telecommunications and Video Surveillance Services or Equipment (Nov 2021)

(a) *Definitions.* As used in this clause—

*Backhaul* means intermediate links between the core network, or backbone network, and the small subnetworks at the edge of the network (*e.g.*, connecting cell phones/towers to the core telephone network). Backhaul can be wireless (e.g., microwave) or wired (*e.g.*, fiber optic, coaxial cable, Ethernet).

*Covered foreign country* means The People's Republic of China.

*Covered telecommunications equipment or services* means–

(1) Telecommunications equipment produced by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities);

(2) For the purpose of public safety, security of Government facilities, physical security surveillance of critical infrastructure, and other national security purposes, video surveillance and telecommunications equipment produced by Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities);

(3) Telecommunications or video surveillance services provided by such entities or using such equipment; or

(4) Telecommunications or video surveillance equipment or services produced or provided by an entity that the Secretary of Defense, in consultation with the Director of National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise connected to, the government of a covered foreign country.

*Critical technology* means–

(1) Defense articles or defense services included on the United States Munitions List set forth in the International Traffic in Arms Regulations under subchapter M of chapter I of title 22, Code of Federal Regulations;

(2) Items included on the Commerce Control List set forth in Supplement No. 1 to part 774 of the Export Administration Regulations under subchapter C of chapter VII of title 15, Code of Federal Regulations, and controlled-

(i) Pursuant to multilateral regimes, including for reasons relating to national security, chemical and biological weapons proliferation, nuclear nonproliferation, or missile technology; or

(ii) For reasons relating to regional stability or surreptitious listening;

LESSOR: _______ GOVERNMENT: DS LG

(3) Specially designed and prepared nuclear equipment, parts and components, materials, software, and technology covered by part 810 of title 10, Code of Federal Regulations (relating to assistance to foreign atomic energy activities);

(4) Nuclear facilities, equipment, and material covered by part 110 of title 10, Code of Federal Regulations (relating to export and import of nuclear equipment and material);

(5) Select agents and toxins covered by part 331 of title 7, Code of Federal Regulations, part 121 of title 9 of such Code, or part 73 of title 42 of such Code; or

(6) Emerging and foundational technologies controlled pursuant to section 1758 of the Export Control Reform Act of 2018 (50 U.S.C. 4817).

*Interconnection arrangements* means arrangements governing the physical connection of two or more networks to allow the use of another's network to hand off traffic where it is ultimately delivered (*e.g.*, connection of a customer of telephone provider A to a customer of telephone company B) or sharing data and other information resources.

*Reasonable inquiry* means an inquiry designed to uncover any information in the entity's possession about the identity of the producer or provider of covered telecommunications equipment or services used by the entity that excludes the need to include an internal or third-party audit.

*Roaming* means cellular communications services (*e.g.*, voice, video, data) received from a visited network when unable to connect to the facilities of the home network either because signal coverage is too weak or because traffic is too high.

*Substantial or essential component* means any component necessary for the proper function or performance of a piece of equipment, system, or service.

(b) *Prohibition*.

(1) Section 889(a)(1)(A) of the John S. McCain National Defense Authorization Act for Fiscal Year 2019 (Pub. L. 115-232) prohibits the head of an executive agency on or after August 13, 2019, from procuring or obtaining, or extending or renewing a contract to procure or obtain, any equipment, system, or service that uses covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology as part of any system. The Contractor is prohibited from providing to the Government any equipment, system, or service that uses covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology as part of any system, unless an exception at paragraph (c) of this clause applies or the covered telecommunication equipment or services are covered by a waiver described in FAR 4.2104.

(2) Section 889(a)(1)(B) of the John S. McCain National Defense Authorization Act for Fiscal Year 2019 (Pub. L. 115-232) prohibits the head of an executive agency on or after August 13, 2020, from entering into a contract, or extending or renewing a contract, with an entity that uses any

equipment, system, or service that uses covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology as part of any system, unless an exception at paragraph (c) of this clause applies or the covered telecommunication equipment or services are covered by a waiver described in FAR 4.2104. This prohibition applies to the use of covered telecommunications equipment or services, regardless of whether that use is in performance of work under a Federal contract.

(c) *Exceptions.* This clause does not prohibit contractors from providing—

(1) A service that connects to the facilities of a third-party, such as backhaul, roaming, or interconnection arrangements; or

(2) Telecommunications equipment that cannot route or redirect user data traffic or permit visibility into any user data or packets that such equipment transmits or otherwise handles.

(d) Reporting requirement.

(1) In the event the Contractor identifies covered telecommunications equipment or services used as a substantial or essential component of any system, or as critical technology as part of any system, during contract performance, or the Contractor is notified of such by a subcontractor at any tier or by any other source, the Contractor shall report the information in paragraph (d)(2) of this clause to the Contracting Officer, unless elsewhere in this contract are established procedures for reporting the information; in the case of the Department of Defense, the Contractor shall report to the website at https://dibnet.dod.mil. For indefinite delivery contracts, the Contractor shall report to the Contracting Officer for the indefinite delivery contract and the Contracting Officer(s) for any affected order or, in the case of the Department of Defense, identify both the indefinite delivery contract and any affected orders in the report provided at https://dibnet.dod.mil.

(2) The Contractor shall report the following information pursuant to paragraph (d)(1) of this clause

(i) Within one business day from the date of such identification or notification: the contract number; the order number(s), if applicable; supplier name; supplier unique entity identifier (if known); supplier Commercial and Government Entity (CAGE) code (if known); brand; model number (original equipment manufacturer number, manufacturer part number, or wholesaler number); item description; and any readily available information about mitigation actions undertaken or recommended.

(ii) Within 10 business days of submitting the information in paragraph (d)(2)(i) of this clause: any further available information about mitigation actions undertaken or recommended. In addition, the Contractor shall describe the efforts it undertook to prevent use or submission of covered telecommunications equipment or services, and any additional efforts that will be incorporated to prevent future use or submission of covered telecommunications equipment or services.

(e) *Subcontracts.* The Contractor shall insert the substance of this clause, including this paragraph (e) and excluding paragraph (b)(2), in all subcontracts and other contractual instruments, including subcontracts for the acquisition of commercial products or commercial services.

(End of clause)

DocuSign

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 3615B109F4DA414BBB32E23046542573 | | Status: Completed |
| Subject: Complete with DocuSign: LA 24 Lease extension LL executed (4).pdf | | |
| Source Envelope: | | |
| Document Pages: 6 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 5 | LeShaundra Greer |
| AutoNav: Enabled | | 1800F F St NW |
| EnvelopeId Stamping: Enabled | | Washington DC, DC 20405 |
| Time Zone: (UTC) Dublin, Edinburgh, Lisbon, London | | leshaundra.greer@gsa.gov |
| | | IP Address: 172.0.49.168 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>8/31/2023 9:20:08 PM | Holder: LeShaundra Greer<br>leshaundra.greer@gsa.gov | Location: DocuSign |
| Security Appliance Status: Connected | Pool: FedRamp | |
| Storage Appliance Status: Connected | Pool: US General Services Administration | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| LeShaundra Greer<br>leshaundra.greer@gsa.gov<br>US General Services Administration<br>Security Level: Email, Account Authentication (None) | <br>Signature Adoption: Pre-selected Style<br>Using IP Address: 172.0.49.168 | Sent: 8/31/2023 9:21:59 PM<br>Viewed: 8/31/2023 9:22:10 PM<br>Signed: 8/31/2023 9:22:22 PM |



**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/31/2023 9:22:00 PM |
| Certified Delivered | Security Checked | 8/31/2023 9:22:10 PM |
| Signing Complete | Security Checked | 8/31/2023 9:22:22 PM |
| Completed | Security Checked | 8/31/2023 9:22:22 PM |

| Payment Events | Status | Timestamps |
|---|---|---|